**DEPENDABLE MOTORS, INC. et al.,
Appellants,**

v.

**C. B. SMITH, Sr., Appellee.**

No. 11630.

Court of Civil Appeals of Texas.

Austin.

Oct. 30, 1968.

Rehearing Denied Nov. 20, 1968.

Hardy Hollers, Austin, for appellants.

Bagby & Foshee, John C. Foshee, Austin, for appellee.

HUGHES, Justice.

C. B. Smith, Sr., appellee, sued Dependable Motors, Inc., Lauthan-Dowell Motors, Inc., G. C. Dowell, Jack Polk and Lubbock Dodge, Inc., appellants, to recover $2,072.62 allegedly due under a lease contract executed by C. B. Smith, Sr. as Lessor and Dependable Motors as Lessee, on April 19, 1960, the obligations of the Lessee under such lease having been assumed by the other parties sued.

This suit calls for the construction of the following paragraph of such lease under facts which are not disputed:

"16. In addition to the rental for the premises hereinabove described, Lessee shall pay to Lessor any increase in State, County, City, Austin Independent School District, or any other ad valorem taxes occurring after April 30, 1960, and in the event the option or renewal is exercised, shall likewise pay to Lessor any increase in State, County, City, Austin Independent School District, or any other ad valorem taxes occurring after April 30, 1965." [1]

It was stipulated that the State and County taxes on the demised property was $398.01 for the year 1959 and that such taxes for the years 1960 through 1965 did not exceed $398.01 for any year.

It was also stipulated that the City of Austin and School District taxes on the demised property for the year 1959 were $2,534.19 and that such taxes on such property for the years 1960 through 1965 were, respectively, $3,114.96, $3,004.52, $3,004.52, $3,004.52, $2,885.35 and $2,934.24.

All parties moved for summary judgment. The motion of appellee was granted; the motion of appellants was denied. The trial court rendered judgment for appellee for the sum of $2,282.53, interest and costs.

The first five points of appellants, jointly briefed, are to the effect that the contract in suit was unambiguous and that it was error for the trial court to consider subjective statements contained in an affidavit made by appellee in support of his motion for summary judgment concerning assumptions made by him when this contract was executed.

It is not contended by any party that the contract in suit is ambiguous, and we do not find it so.

For this reason and because the contract, construed in connection with stipulated facts, required rendition of the judgment as made by the trial court, we do not find it necessary to dip into the affidavit of appellee and weigh the effect of statements therein which are challenged by appellants in their first five points.

The three remaining points of appellants are, in substance, that under the contract

1. The option to renew was exercised.

and undisputed evidence it appears, as a matter of law, that it was the intention of the parties to the contract to use the tax year 1960 as the basis upon which to determine any subsequent increase in ad valorem taxes on the demised property, and since there was no increase in such taxes after the year 1960 a take nothing judgment should have been rendered against appellee.

Appellants state, "When the parties signed the lease contract on April 19, 1960, it is presumed that they contracted with reference to the existing laws at the time, and particularly with reference to the charter of the City of Austin, relating to ad valorem taxes."

We agree with this statement.

It was stipulated that the charter of the City of Austin controls the taxation of property in the City and certain sections of this charter are incorporated in the record by stipulation.[2]

The taxing procedures relevant here, as shown by the Austin City Charter (Art. VIII) are, in substance, as follows:

All property, not exempt, having a situs in Austin on January 1 of each year "shall be subject to taxation for such year."

Every person holding, owning or controlling such property shall render it between January 1 and April 1.

The City tax collector shall review such renditions and fix the values for tax purposes.

If the tax collector makes a change in the value of the property rendered, he shall notify the taxpayer and advise him that he may appear before the Board of Equalization and protest such change.

The City Council shall each year prior to June 1 appoint a Board of Equalization which shall convene as soon as practicable after June; giving notice of time and place of meeting.

If the Board finds it necessary to change any rendered value of property appearing on the assessment rolls, it shall give notice to the taxpayer and provide for a hearing.

Immediately upon the completion of its work, the Board of Equalization shall certify its approval of the assessment rolls and forward them to the Council.

Upon receipt of the assessment rolls, the Council shall approve and adopt the same as the assessment rolls of the City for the current year.

All taxes due the City may be paid any time after assessments have been made final by the Council. Taxes for each year shall become due on October 1 of the year of levy and shall be paid by the following January 31.

All property whose situs is in the City of Austin on January 1 of each year shall stand charged with a special lien from said date for the taxes due thereon.

The record does not show when the annual tax levy is made by the City of Austin.[3]

██ It is our opinion under the law applicable to the facts of this case that there was no increase in the City of Austin and School District taxes for the year 1960 "occurring" prior to April 30, 1960, but that there was such an increase "occurring" after April 30, 1960.

Webster's New International Dictionary (2 Ed.), p. 1684, defines the ordinary and

2. The only taxes involved are City of Austin and Austin Independent School District taxes which are controlled by the same provisions of the Austin City Charter.

3. See Art. 689a–13 to 689a–16 relating to City budgets, sec. 15 art. 689a–15 providing that the tax levy must be made in accordance with the budget. Although not in the record, we have examined the budget provisions of the Austin City Charter and they provide that the budget and tax levy shall be prepared and made at a time which is after April 30 of the tax year.

reasonable meaning of "occur" as: "To meet one's eye; to be found or met with; to present itself; to appear; hence, to befall in due course; to happen. * * *"

Ad valorem taxes may be increased in only two ways, either by increasing the value of the property taxed or by increasing the rate of the tax. Until both of these variables are fixed it cannot be determined whether taxes have been raised or lowered. This record does not disclose whether the increase in the 1960 taxes over the 1959 taxes was due to increase in values or in the tax rate. It is certain, however, under the law that neither the total taxable values of city property nor the tax rate for the year 1960 could have been determined or set prior to April 30, 1960. Until the Board of Equalization certified approval of the assessment rolls, which would be subsequent to June 1, the total taxable values could not be ascertained and the tax rate could not be properly determined. It follows that no tax increase occurred prior to April 30, 1960. The 1960 tax was greater than the 1959 tax, but this was due to events which must have happened or occurred after April 30, 1960.

■ Appellants contend that the contract from its terms must be construed as providing that appellee could recover for tax increases after the year 1960, and since taxes did not increase after 1960, he should have been denied recovery.

We are unable to accept this contention as correct. When the contract was executed, the amount of taxes for the year 1959 were available and the contract must have been negotiated in view of these known facts. They contracted specifically with reference to taxes and with reference to their possible increase. This increase, in reason, could only relate to the known tax status, which was for the year 1959. To construe this contract as appellants would have us do we would have to hold that the parties contracted that while they did not know what the 1960 taxes would

be, if the taxes for the subsequent years were higher than the unknown 1960 taxes, Lessee will have to bear such increase. This would be a strained, unnatural and rather absurd construction to place upon a contract conceded to be clear and unambiguous.

■ Appellants also contend that since the taxes for 1960 are fixed as of property owned on January 1, 1960, that this date establishes that the increase occurred on such date. Parties, by contract, may make the effective date of an act prospective or retrospective, but this cannot possibly alter the date or time of the occurrence of an act. The legislative branch of our government can, and frequently does, use the same technique in enacting laws and their validity, vested rights not being retroactively impaired, is unquestioned.

Appellants cite the case of McCrory Stores Corp. v. Braunstein, 102 N.J.L. 590, 134 A. 752 as "being closely in point." We agree, but we believe it sustains our decision. We quote from that opinion:

"The lease is for a term of 20 years, running from October, 1915, to October, 1935. The rental was fixed at $15,000 per year, plus an additional thus provided in the portion of the lease which the court is asked to construe:

'And the said party of the second part [that is, the tenant] hereby covenants and agrees that it will pay all the increase in taxes on and after October 27, 1920, which said increase in taxes shall be considered as so much rent due and payable within 30 days after the same becomes due and payable to the city of Atlantic City.'

It appears that the taxes assessed upon this property for the year 1920 were considerably in excess of those assessed upon it for the year 1919, and the contention of the lessor is that, by the provision of the lease which has been recited, all in-

creases over the assessment of 1919 are to be paid by the lessee. The lessee, on the other hand, contends that it is an increase over the assessment of 1920 that it is obligated to pay. The circuit court considered that the true construction of this provision of the lease was that contended for by the tenant, and, upon so advising the Supreme Court, a declaratory judgment was there entered in accordance with that view. * * *

It is further urged that the circuit court was in error in holding that, by the true construction of the clause in the lease which has been already recited, the year 1920, and not the year 1919, was the basic year to be used in determining the amount of the increased taxes payable by the lessee. We think this contention also is without merit. By the very terms of the provision in the lease, it was the increase in taxes which should take place on and after October 27, 1920, and which should thereafter become payable to the city of Atlantic City, that the lessee was obligated to pay as rent. The amount of municipal taxes to be paid in a given year is required by our tax act to be determined early in that year. They are required to be paid by the taxpayer as follows: One-half on the 1st day of April of that year, and one-half on the 1st day of December of that year. *The increase in taxes* (if any) *in a particular year over those levied and assessed in a preceding year occurs when the levy and assessment for the particular year is completed,* and that necessarily occurs prior to the date when the first payment is to be made. * * *

On the whole case, we conclude that the judgment under review should be affirmed." (Italics ours.)

This case directly supports our holding that the increase in taxes "occurred" when the taxing process was completed.

The judgment of the trial court is affirmed.

Affirmed.