A. J. ROBBINS & COMPANY, Appellant,

v.

W. C. ROBERTS, Appellee.

No. 9202.

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1980.

Rehearing Denied Jan. 28, 1981.

V. G. Kolius, Amarillo, for appellant.

Stokes, Carnahan & Fields, Barry D. Peterson, Amarillo, for appellee.

COUNTISS, Justice.

The single question presented by this appeal is whether certain contracts between the landlord and the tenant make the tenant responsible for ad valorem taxes on the leasehold estate. The trial court, concluding that the tenant was responsible, rendered judgment for the landlord. We disagree, and reverse and render judgment for the tenant.

Appellee W. C. Roberts (hereafter "Roberts") was president of the incorporated business known as W. C. Roberts Lumber Co., and owner, individually, of the real estate where the lumber company transacted its business. On October 7, 1976, A. J. Robbins entered into a contract with W. C. Roberts Lumber Co. to purchase substantially all of its assets, including inventory, office furniture, fixtures and rolling stock. Paragraph VI of the purchase contract stated, as pertinent here: "All ad valorem taxes ... shall be prorated between the parties down to the date of closing."

The purchase contract was, at Robbins option, terminable unless Robbins was also able to lease the real estate where the business was being conducted. However, on the same date Robbins, and Roberts acting individually, entered into a lease of the premises, wherein Robbins was granted an initial five year lease, an option to renew for five more years and an option to pur-

chase the realty. The lease contract does not mention ad valorem taxes.

The purchase contract and the lease contract were, with the approval of W. C. Roberts Lumber Co. and W. C. Roberts, subsequently assigned by Robbins to appellant A. J. Robbins and Company.[1] Robbins and Company commenced operation of the business and occupation of the leasehold estate on January 1, 1977.[2]

When Roberts received the 1977 ad valorem tax statements for the leasehold premises, he asked Robbins to pay them. Robbins declined. The same request and declination occurred with respect to the 1978 taxes. Roberts paid the taxes and sued Robbins and Company for reimbursement. Two theories of recovery were alleged by Roberts: (1) there was a mutual mistake in failing to include a provision in the lease contract requiring Robbins and Company to pay the ad valorem taxes on the leasehold estate and (2) the contractual responsibility of Robbins and Company for ad valorem taxes under the purchase contract encompassed responsibility for ad valorem taxes under the leasehold contract because the two contracts relate to a single transaction and must be construed together.

After a nonjury trial, the trial court adopted the second theory, made findings and conclusions accordingly and rendered judgment reimbursing Roberts for the 1977 and 1978 taxes. Robbins and Company presents four points of error in this court. Our disposition of the case requires consideration only of point of error one, wherein Robbins and Company states that the trial court erred in construing the two contracts together because they are two separate and distinct contracts on entirely different subject matters.

The obligation for ad valorem taxes on real estate is by statute imposed on the owner of the realty. Tex.Rev.Civ.Stat.

1. Unless otherwise stated, "Robbins" as used herein refers to the individual, A. J. Robbins and "Robbins and Company" refers to appellant A. J. Robbins and Company.

2. The contracts are dated October 7, 1976, but the parties testified that the closing date of the transaction was December 31, 1976.

Ann. art. 7171 (Vernon 1960).[3] A lessee in possession of privately owned realty has no obligation for ad valorem taxes merely because of his possession. Annot. 86 A.L.R.2d 663 (1962). The owner and the lessee may, however, contract for payment of the taxes by the lessee. *See Dependable Motors, Inc. v. Smith*, 433 S.W.2d 933 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). While such a contract does not relieve the owner of ultimate responsibility to the taxing authority for the taxes, Tex.Rev.Civ.Stat.Ann. art. 7171, *supra*, it does permit the owner to seek appropriate remedies against the lessee if the lessee fails to perform the contractual obligation to pay the taxes. *See Dependable Motors, Inc. v. Smith*, 433 S.W.2d at 934. Absent a contractual obligation, however, a lessee has no responsibility for ad valorem taxes on privately owned leased realty. *See generally, Dependable Motors, Inc. v. Smith*, 433 S.W.2d 933; Annot. 86 A.L.R.2d 663 (1962); 51C C.J.S. Landlord & Tenant § 359 et seq. (1968).

The issue in this case is whether the contracts between the parties impose that obligation on Robbins and Company. Because the lease contract does not specifically impose the obligation on Robbins, Roberts must, in the context of this case, establish the obligation through the purchase contract. Roberts attempts to do so by contending that the purchase contract and the lease contract jointly demonstrate a single transaction and must be construed together as one contract. Thus, Roberts contends the sentence in the purchase contract requiring proration of ad valorem taxes to date of closing creates a contractual obligation on Robbins to be responsible for all ad valorem taxes, not only on the personalty conveyed under the purchase contract, but also on the realty leased under the lease contract, from and after the date of closing.

The general legal principle upon which Roberts relies is sound. As stated in *Miles v. Martin*, 159 Tex. 336, 341, 321 S.W.2d 62, 65 (1959), "It is well settled that separate instruments executed at the same time, between the same parties, and relating to the same subject matter may be considered together and construed as one contract." The *Miles* case added the following caveat, however, (*id.*, 321 S.W.2d at 65): "This undoubtedly is sound in principle when the several instruments are truly parts of the same transaction and together form one entire agreement. It is, however, simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation."

It is readily apparent that the two contracts in question here are part and parcel of the same transaction in a general sense. Robbins purchased the inventory, rolling stock and other personalty necessary to the operation of a lumber yard and leased the land and buildings where the business was being conducted in order to continue to operate the business in the same location. It is necessary to read both contracts in order to completely understand the total transaction. The principle upon which Roberts relies, however, cannot carry him to the result he desires.

Each of the contracts is intrinsically complete and each has a distinct and separate purpose. This is not a case where various writings must be put together in order to ascertain a single contractual obligation. See, e. g., *Guadalupe-Blanco River Au. v. City of San Antonio*, 145 Tex. 611, 200 S.W.2d 989 (1947). The purchase contract establishes the terms and conditions for the conveyance of the personal property of the lumber yard. The lease contract establishes the terms and conditions for the lease of the realty where the lumber yard will do business. Although each refers to the other and consummation of the purchase contract was, at Robbins' option, dependent upon consummation of the lease contract, specific obligations assumed under one contract cannot be used to alter, amend or add to specific obligations assumed under the other con-

---

**3.** This article is repealed by Tex.Prop.Tax.Code (Vernon 1979), effective January 1, 1982. All references are to art. 7171, the law in effect at the time this dispute arose. *See* section 32.07 for a similar provision in the Tax Code.

tract. To do so would be to apply the general principle "arbitrarily and without regard to the realities of the situation." *Miles v. Martin*, 321 S.W.2d at 65.

Cases involving fact situations similar in principle illustrate our view of this case. *Government Personnel Mut. Life Ins. Co. v. Wear*, 247 S.W.2d 284 (Tex.Civ.App.—San Antonio) *modified on other grounds*, 151 Tex. 454, 251 S.W.2d 525 (1952),[4] involved several contracts between an insurance company and two of its agents. Each contract was complete but related to the other and a reading of all of the contracts was necessary in order to understand the total transaction. The court assumed the contracts could be read together in order to determine the intention of the parties in executing the various instruments. *Id.* at 286. That did not mean, however, that the various instruments were consolidated into one instrument so that every provision in each instrument became a part of every other instrument. As the court stated, "Reading and construing contracts together does not justify bodily taking a paragraph from one contract and transplanting it in the other." *Id.* at 286. The same view is expressed in *Lawrence v. United States*, 378 F.2d 452 (5th Cir. 1967):

> Thus, while recognizing that two or more separate agreements executed contemporaneously are to be construed together, perhaps even as one instrument, this does not mean that all are bodily consolidated into one instrument so that every provision in one instrument thereby becomes a part of every other instrument. *Id.* at 461.

Accordingly, we hold as a matter of law that the language in the purchase contract requiring Robbins to prorate ad valorem taxes to the date of closing pertains only to the taxes on the personal property being purchased under that contract and creates no obligation to pay ad valorem taxes under the lease contract. Point of error number one is sustained.

4. In *Wear*, the Supreme Court modified the Court of Civil Appeals' opinion on the question of attorneys' fees, but approved the Court of

Roberts argues alternatively that the judgment of the trial court can be upheld on his pleaded theory of mutual mistake. We notice, however, that the trial court made no findings of fact on any element of mutual mistake. That ground of recovery is, therefore, waived. Tex.R.Civ.P. 299.

The judgment of the trial court is reversed and judgment here rendered for appellant A. J. Robbins and Company.

Civil Appeals' disposition of the multiple contracts question.