**CHEROKEE WATER COMPANY, Petitioner,**

v.

**GREGG COUNTY APPRAISAL DISTRICT, et al., Respondents.**

No. C–9052.

Supreme Court of Texas.

Dec. 31, 1990.

---

William Ikard, Patricia L. Sessa, William W. Kilgarlin, Austin, for petitioner.

Earl Roberts, Jr., Longview, R. Douglas Muir, Austin, for respondents.

## OPINION

GONZALEZ, Justice.

This is an appeal of an ad valorem tax dispute. Cherokee Water Company, the taxpayer, challenged the valuation of certain interests in land in Gregg and Rusk Counties for the tax years 1982, 1983, 1985, and 1986. The trial court rendered judgment setting a lower fair market value than the appraised value set by Gregg County Appraisal District [1] ("district") for years 1983, 1985, and 1986, but setting a higher value for the year 1982. Cherokee appealed complaining about the value determination for all years, and the court of appeals affirmed. 773 S.W.2d 949. We affirm the judgment of the court of appeals.

Cherokee is a close corporation with 1500 shareholders. It owns title to approximately 7,077 acres of land in Gregg and Rusk

1. The Gregg County Appraisal District provides appraisals for Gregg County, and also for the Kilgore Independent School Districts, which includes land in Gregg and Rusk Counties.

Counties, including all of Lake Cherokee and the surrounding land as well as additional land in the area. Cherokee receives income from the sale of water to the City of Longview under a contract which was renewed in 1984 for a 50–year term. In 1986 this income was $312,817. It receives an additional $40,000 a year from a contract with a local utility for rental of water for use in a generating plant.

Only Cherokee's shareholders can acquire a leasehold interest in the lakefront property, one lot per share. It is uncontroverted that these are not arm's-length transactions and they have been characterized by the district as "sweetheart deals." The leases are for a year term, renewable annually at the lessee's option, provided the lessee has paid rent and otherwise complied with the bylaws and rules of the company. The Company has the right to foreclose on the stock for failure to pay fees or fines or otherwise comply with the company's rules and regulations. The leases terminate automatically upon the sale or other transfer of the stock.

The leases provide for rent as determined annually by Cherokee's board of directors. The board sets rent in a budget session in which they attempt to forecast expenses and income and determine the amount needed to break even or make a small profit. In 1986, the annual rent for a lot was $250.

Many shareholders have built houses and other improvements on the property, which according to the lease agreements remain the property of the lessees. The improvements become the property of Cherokee only if they are not removed within sixty days of termination of the lease. Cherokee and the District agree that the improvements should be treated as personal property of the lessees.

Cherokee asserts that there is no evidence to support the judgment of the trial court and its findings of fair market value. Its theory is that the evidence of value tendered by the appraisal district is inadmissible, and once disregarded, there is no evidence to support the trial court judgment. The district submitted the testimony of James Norwood, the appraiser who had valued the property for the district. Cherokee contends that his testimony was inadmissible because it was not conducted in accordance with Tex.Tax Code Ann. § 23.01(b) (Vernon Supp.1991), which provides:

> (b) The market value of property shall be determined by the application of generally accepted appraisal techniques, and the same or similar appraisal techniques shall be used in appraising the same or similar kinds of property. However, *each property shall be appraised based upon the individual characteristics that affect the property's market value.*

Emphasis added.

Norwood testified that three generally recognized approaches to value are cost, income, and market. In his view, after taking into consideration that the property was to be valued as if a willing purchaser wished to purchase the property as a whole from a willing seller, and that the property is to be valued based on its highest and best use, the most appropriate method of arriving at value is the "developer's absorption method." This method assumes that the highest and best use of the property as a whole is for lake front single family residential development. It is an estimation of value to a developer, based on the income expected from retail sales over time. This in turn incorporates an analysis of sales of comparable lake front property lots.

Cherokee did not challenge that the appraiser's approach was not an acceptable method of appraisal. Instead, Cherokee objected to the application in this case because: (1) allegedly, Norwood did not take all "individual characteristics" into consideration in preparing his valuation as required by statute; (2) the land must be valued as a single tract of raw, undeveloped acreage; and (3) the comparables used by Norwood included land with improvements.

Norwood valued the property as being in fee, with no encumbrances. Cherokee argues that this is erroneous because, first of all, the property was subject to the water contract, which requires that development be controlled to protect the water supply. According to Norwood's testimony, he did not give separate consideration to the contract because, in his analysis of market data, he only compared sales of properties subject to similar water sales contracts and "whatever effect the water supply contract might or might not have on the land surrounding the reservoir would be reflected in the sales [used for comparison]." While he did not analyze the water sales contract separately as an encumbrance, Norwood testified that this factor was built into his choice of comparable sales. There is some evidence, therefore, that the water contract was taken into consideration.

The next factor that Cherokee argues should have been considered as a characteristic affecting value is the lease agreements between the company and the shareholders. Cherokee contends that because the leases are, in most circumstances, renewable at the option of the shareholder, the company's only interest in the property is a reversion that only has a remote possibility of returning possession to Cherokee. Cherokee argues first that it should only be taxed on the value of the reversion.

■ It has long been the law that the lessor rather than the lessee is responsible for taxes on the full value of the property. *Daughtery v. Thompson*, 9 S.W. 99, 101 (Tex.1888); *A.J. Robbins & Co. v. Roberts*, 610 S.W.2d 854, 855-56 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Martin v. City of Mesquite*, 590 S.W.2d 793, 798 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Irving Indep. School Dist. v. Delta Airlines, Inc.*, 534 S.W.2d 365, 368-69 (Tex. Civ.App.—Texarkana 1976, writ ref'd n.r.

e.). The lessor's interests in the property are not just the future right to receive the property back at the end of term, but the present right to receive income in the form of rent.

■ Cherokee argues that the cited cases are no longer good law because of the amendment to section 23.01(b) of the Tax Code, which provides that in determining market value, "each property shall be appraised based upon the individual characteristics that affect the property's market value." Act of May 27, 1985, 69th Leg., R.S., ch. 823, § 5, 1985 Tex.Gen. Laws 2880, 2881 (effective January 1, 1986).[2] We may not construe this amendment in isolation in determining whether the legislature intended to overturn a century of precedent, and radically alter an untold number of lessor-lessee relationships.[3] The code continues to provide that for appraisal roll purposes, property is to be listed in the owner's name and not the lessee's. Section 25.06 expressly provides that, with certain exceptions not relevant here, "*property encumbered by a leasehold or other possessory interest* or by a mortgage, deed of trust, or other interest securing payment or performance of an obligation *shall be listed in the name of the owner of the property so encumbered.*" TEX.TAX CODE ANN. § 25.06 (Vernon 1982). Section 25.07 provides one exception, that a leasehold of property that is exempt from taxation to the owner is to be listed in the name of the lessee. TEX.TAX CODE ANN. § 25.07 (Vernon 1982 & Supp.1991).

If we accept Cherokee's position on the 1985 amendment we are faced with two choices of interpretation. Either the legislature intended to forego taxation of rental property subject to lease except for the value of the lessor's reversionary interest, or to begin taxation of lessees on the value of the leasehold. As to the former, there is

---

2. Assuming that this statute changes existing law, it only became effective January 1, 1986, the last year that is involved in this suit.

3. The parties to a lease generally take into account the lessor's tax liability when negotiating

the lease, either by contractually providing for pass through to the tenant or reflecting the amount of estimated taxes in setting the amount of rent. *A.J. Robbins & Co.*, 610 S.W.2d at 856.

nothing in the general language of the 1985 amendment concerning valuation that indicates an intent to give lessors a windfall, depriving the state of revenue from that portion of the value of rental property attributable to leasehold interests. We cannot presume that the legislature intended property not under lease to be taxed at full market value while leased property to be taxed only for the value attributable to the lessor's interest. *See* TEX. CONST. art. VIII, §§ 1, 2 (requiring equal and uniform taxation, and listing exemptions).

As to the latter, we look to the language and structure of the property tax provisions for guidance. While the code goes into specific detail in providing for the taxation of leases in special situations, it does not provide a mechanism for taxing, assessing, and collecting on the vast majority of leases. Given the fact that the Tax Code specifically mentions those instances where the lessee's name is to be carried on the property rolls for tax purposes and that Cherokee's land is not exempt from taxation, Cherokee, as owner of the land, is responsible for payment of the taxes.

■ The dissent argues in effect that the trial court erred in admitting the testimony of Norwood because he was instructed to ignore the improvements and the leases; thus, we should remand. However, the trial court, not Norwood, determined the appraised value in the trial de novo. It raised the value for 1982 and lowered the values for 1983, 1985, and 1986 and it is these appraisals which we review here. Norwood's appraisals were not the only evidence before the court—evidence of the leases and other comparable sales was also presented. Since we do not know the specific method that the trial court used in arriving at its determination of property value,[4] Cherokee cannot dispute the trial court's determination of the appraisal value

based on the method that Norwood used appraising the property. The trial court arrived at a different value and stated in its findings of fact and conclusions of law that it "did not find that the leases amount[ed] to substantial encumbrances seriously depreciating freehold values." The court had evidence before it that the leases in this case, while of potentially perpetual duration, provide that lessees must pay rent and comply with company bylaws and rules. Also, the rent may be redetermined annually by the board of directors, who are selected by the lessee-shareholders. Should it prove necessary, the company may pass any increase or decrease in taxes to the lessees. Therefore, it cannot be said that the trial court failed to consider the leases as argued by the dissent.

Cherokee also argues that the property should have been valued as a whole tract rather than in individual parcels. Cherokee rendered the property for taxation as a single economic unit. The district valued the land in parcels reflecting their use. Lake front property was significantly greater in value than property located elsewhere. It argues that the property should have been valued as a whole, including the portion for which it accepted the valuation. This would necessarily result in diminishing the per acre appraised value of the tracts subject to appeal. However, Cherokee appealed as to some tracts but not others.

■ Ordinarily property should be appraised as rendered. *Electra Indep. School Dist. v. Waggoner Estate*, 168 S.W.2d 645, 650 (Tex.1943). The right is not immutable, however. In *Waggoner*, the court held that "the taxing authorities should have assessed and valued the [property] in accordance with the description of the property owner's rendition unless the property was being used in such a manner

---

4. In its initial findings of fact and conclusions of law the trial court did not specify the method of appraisal used to arrive at its determination of property value. Cherokee filed a request for additional findings of fact and conclusions of law but Cherokee did not request the trial court to specify its method of appraisal. Therefore, we do not have evidence that the trial court used an improper method to arrive at fair market value of Cherokee's property.

as to make it impossible to do so. . . ." *Id.* In *French Independent School District v. Howth,* it was held that an owner of property may waive or be estopped to complain in the trial court that the property should have been valued in parcels. 134 S.W.2d 1036, 1037–38 (Tex.1940). Here, although Cherokee originally sought to have the district value the property as a single tract, it retreated from that position when it argued that the trial court determine fair market value of certain parcels, not the entire tract. Further, Cherokee should not be allowed to accept the benefit of the district's decision to appraise in parcels and then complain on appeal that some of the parcels should be considered to reduce the value of the more desirable tracts. We agree with the court of appeals, that in order to raise the complaint that tracts should be valued as a whole, the party must appeal as to all tracts.

Finally, Cherokee disputes that the property should not have been valued as individual lots in a residential subdivision, without any improvements, because the land was improved. However, this is the manner in which the district valued the property and that valuation is not in issue here. We are reviewing the trial court's determination of land value. Although the trial court received evidence of the manner in which the district valued this land, it arrived at its own determination of value which may or may not be based on the district's method.[5] The findings of fact and conclusions of law do not state what method the trial court used in arriving at its determinations of value. Therefore, we do not need to address the constitutionality of the developer's absorption method in this case.

In any event, the court stated in its findings of fact and conclusions of law that it considered the very items which Cherokee alleges that the district instructed Norwood to ignore. Even if the trial court used a similar method as used by the district, it is Cherokee who argued that the improvements were not its property—the houses were considered to be the personal property of the lessees. Also, Cherokee leased the land to its shareholders in accordance with a scheme of lots. Although no plat is on file with the county, a plat is maintained in the offices of the company, which are used when shares in the company are sold. Therefore, Cherokee's argument that under the circumstances of this case, the developer's absorption method was unconstitutional is unfounded.

■ Cherokee also asserts that (a) the District Court has no authority to raise fair market value, and (b) if it does have the authority, then it may do so only when the appraisal district has perfected an appeal, which it did not do for the 1982 year. However, the appeal to the trial court is a trial de novo, and the trial court "shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." TEX.TAX CODE ANN. § 42.23(a) (Vernon 1982). The court is not to admit in evidence the fact of a prior action by the appraisal review board "except as necessary to the extent necessary to establish its jurisdiction." *Id.* § 42.23(b). The duty of the trial court is to "fix the appraised value of property in accordance with the requirements of law. . . ." *Id.* § 42.24. Appraised value according to law is fair market value. *Id.* §§ 1.04(8), 23.-01(a). Given the appeal of the district's appraisal is by trial de novo, the trial court clearly has power to determine market value whether it be higher or lower than the value determined by the appraisal district.

■ Finally, Cherokee complains that the trial court improperly considered the sale of corporate stock as being a comparable sale. Some of the "comparable sales" considered by Norwood actually involved

---

5. There was evidence before the trial court that there are various recognized methods of property appraisal. While we do not condone a trial court's use of an unrecognized method in determining property values, without findings of fact

and conclusions of law regarding the specific method used by the trial court, we cannot say the valuations were improper. *See* note 4, *supra.*

sales of Cherokee company stock. In a letter to the parties which Cherokee characterizes as findings of fact, the trial court set forth its opinion that some of the value of stock ownership cannot be attributed to the value of the leasehold, and had been taken into account in fixing value. We agree that the sale of corporate stock is not sufficiently similar to an interest in realty to constitute a comparable sale. The letter is not competent evidence of the trial court's basis for judgment. *See Brazos River Auth. v. Gilliam,* 429 S.W.2d 949, 953–54 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). The court could have disregarded the evidence at the time judgment was actually signed. *Id.* Furthermore, the letter, written prior to judgment, is not a finding of fact as contemplated by rules 296–299 of the Texas Rules of Civil Procedure. Nothing in the formal findings of facts filed after judgment indicates whether the trial court considered stock values for any purpose. There was evidence of other sales of comparable property which would support the trial court's decision. Accordingly, this point is without merit.

The judgment of the court of appeals is affirmed in all respects.

RAY, J., dissenting.

RAY, Justice, dissenting.

With due respect to my colleagues, I must respectfully register my dissent because the judgment in this ad valorem tax case was based on a constitutionally infirm appraisal. The appraisal was inherently flawed because the appraiser for Gregg County improperly ignored the requirements for real property tax appraisals conducted in Texas. TEX.TAX CODE § 23.01. This error violates fundamental rights afforded state and federal protection to taxpayers, who are guaranteed basic precepts under the Constitution of the State of Texas and the Due Process Clause of the 14th Amendment. To preserve those rights, the proper disposition of this case is to reverse

and remand to the trial court for a trial consistent with this dissent.

The decision in this case is controlled by the Texas Tax Code § 23.01(b). In relevant part it provides:

> The market value of property shall be determined by the application of generally accepted appraisal techniques, and *the same or similar appraisal techniques shall be used in appraising the same or similar kinds of property.*

(emphasis added.) This law limits a taxing entity's appraisal methodology and requires it to be consistent and reliable.

The judgment of the trial court was based on the Gregg County appraisal, a focus of appropriate circumspection, and the appraisal fails to withstand statutory and constitutional scrutiny. A taxing unit that adopts a plan which dictates that the appraiser arbitrarily ignore some real characteristics of a subject and hypothesize others, manifestly violates the statute and the constitutions. An appraisal, conducted in this manner, does not constitute competent evidence and must be annulled. U.S. CONST. amend. XIV; TEX. CONST. art. VIII §§ 1, 18; TEX.JUR.3d, *Taxation* § 336. We are constitutionally bound by the proclamation that taxation must be equal and uniform, and any method of appraisal leading to discrimination in practice is inherently unacceptable. *Id.*

In this case, the record is uncontroverted; the controlling appraisal did not comport with the statutory mandate requiring "the same or similar appraisal techniques" in appraising the same or similar properties. In contravention of this requirement, the subject was appraised according to criteria crafted by the appraisal district to achieve a pre-ordained result.

A valid ad valorem appraisal is bound by a two-prong test. The government's valuation must accomplish uniform taxation, and the methodology it employs must produce a reliable result. In an attempt to achieve uniformity among facially similar properties under the first prong, Gregg County

abandoned the second prong. Gregg County conditioned the appraisal on certain fictitious factors in order to tap new funds. While capturing a newly found source of revenue may not offend a traditional sense of justice, situational ethics, where the end justifies the means, fails the test of consistency.

The purpose of a property appraisal is to objectively ascertain the value of a subject property; however, the Gregg County appraisal was conditioned on inaccurate factors, impermissibly engaging in a result-oriented approach. The appraiser was not objective since he was instructed to disregard all encumbrances and appraise the property as though none existed; furthermore, he was informed to fabricate other conditions. The most disturbing aspect is that the choice of factors to be included, ignored, or fabricated were dictated by Gregg County. These prejudicial instructions impermissibly polluted the appraisal.

Taxing units must not be granted unbridled freedom to justify valuations according to the exclusion of real factors and/or inclusion of mythical factors of their choice. Due process protections recognized that the taxpayer is, the one, in need of protection due to the formidable burden he must overcome to prevail in an appraisal contest. Curiously, the taxing authority is the only one protected under the majority's decision, since it is unlikely that the judicial system will indulge a taxpayer the same latitude. A taxpayer will not be allowed to present evidence in the trial court where he, in his sole discretion, is permitted to ignore certain real characteristics and hypothesize others to successfully challenge the valuation. Yet, by affirming the hypotheticals contended by the appraisal district in this case, the majority avails this liberty to the government while precluding a taxpayer the same indulgence.

The subject appraisal ignored the size of the property, encumbrances such as leaseholds, contracts, and long-term, hypothecated, personal property structures. Fictitious characteristics were indulged, including appraising the property as fee simple, vacant, and ready for sale. The effect was to equate a singular, burdened estate with numerous, individual, fee estates ready for retail sale. Gregg County boldly admitted the appraisal was based on a fiction, but justified this fiction on situational ethics. If the current state of appraisal methodology is so infirm as to be unable to accurately contemplate size, long-term contracts, and leases, that Gregg County was compelled to instruct their appraiser to disregard these factors in order to reach a value it considered appropriate, then Gregg County's argument is properly directly to MAI appraisal methodology. The judicial system is not the appropriate vehicle to vindicate the failures in valuation methods.

A significant issue to address is whether the majority's decision will facilitate equal and uniform taxation of real property. An affirmative answer to this question appears impossible due to the latitude afforded the government. There is no authority to grant a taxing authority unlimited ability to fashion conditions in justification of a result.

Instead of promoting a framework for consistency, today's majority decision is destined to create chaos. The resolution of the decision addressing which issues are to be permitted, ignored, or fabricated, when subsequent conflicts involving unequal valuations by two or more taxing jurisdictions arise, is likely to result in a judicial and procedural nightmare. The judicial system will be unnecessarily burdened in an effort to resolve valuation controversies. Furthermore, there are numerous procedural questions to be resolved: Which real or fabricated conditions are to be permitted to be superimposed on a particular property, and which real or pretend conditions will be ignored? The unpredictability to be generated is contrary to the constitutional mandate.

In order to promote uniform taxation, each appraisal district must adhere to the same requirements. The legislature recognized the importance of consistency in stan-

dards governing appraisals, and punctuated this recognition, in 1986, with an amendment which demands appraisals to contemplate all characteristics affecting a property. TEX.TAX CODE § 23.01(b) (as amended, 1986).

In making the required analysis, this non-utilitarian approach, in which the end justifies the means, cannot be tolerated. Such reasoning is tantamount to *de facto* taxation. It is the job of the legislature to write the laws, and the duty of this court to interpret those laws; this court has no license to ignore statutory mandates and engage in wholesale alteration of the statute.

In addition, contrary to token disclaimers, there is evidence that both the appraiser and the trial court impermissibly factored the value of intangible stock to arrive at the property values. If Gregg County objects because ownership of property, held in this manner, evades the reach of taxing authorities, Gregg should direct its dissatisfaction to the legislature. It is neither the duty nor the providence of this court to police the inequities of statutory loopholes.

In reference to Petitioner's point of error objecting to the trial court's putative authority to increase a property's value, above the value set by the appraisal district, Cherokee, and other similarly situated taxpayers, must seek legislative redress. The vitality of this point of error is precluded by the statutory impediment requiring a trial *de novo* in an ad valorem appeal. Until the statute is changed, it appears that the trial court has discretion to fix any value supported by competent evidence.