Opinion filed September 20, 2007












 
 
  
 
 







 
 
  
 
 




Opinion filed September
20, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00361-CV 

                                                     __________

 

                        LONG
TERM CARE PHARMACY ALLIANCE,

OMNICARE INC., AND PHARMERICA INC., Appellants

 

V.

 

TEXAS
HEALTH AND HUMAN SERVICES COMMISSION

AND ALBERT H. HAWKINS, COMMISSIONER, Appellees

 



 

On Appeal from the 126th District Court

 

Travis
 County, Texas

 

Trial Court Cause No. GN304647

 



 

O
P I N I O N








Long
Term Care Pharmacy Alliance, Omnicare Inc., and Pharmerica Inc. filed this
action seeking a declaratory judgment that the Texas Health and Human Services
Commission (HHSC) and its Commissioner Albert H. Hawkins failed to follow the
requirements of the Texas Administrative Procedure Act (the APA)[1]
in adopting Section 355.8551(6), a rule that became effective October 5, 2003.[2] 
Appellants assert the following:  (1) that, prior to the adoption of Section
355.8551(6) in 2003 (the 2003 Rule), pharmacies in the Texas Medicaid Vendor
Drug Program had been entitled to a delivery fee of $.15 per prescription on
all Medicaid prescriptions filled, including those delivered to patients in
nursing homes and assisted living centers; (2) that notice of the proposed
Section 355.8551(6) earlier in 2003 indicated that the $.15 per prescription
would continue to be paid on deliveries to patients in nursing homes and other
institutions; and (3) that the substantive change between the proposed rule and
the adopted 2003 Rule, which eliminates the delivery fee on deliveries to
patients in nursing homes and other institutions, should not have been
adopted.  According to appellants, the 2003 Rule as adopted should have been
re-proposed to allow comment on the substantive change.

The
issue in this case B
whether a minor amendment to a rule makes moot a challenge to an earlier
substantive change in the rule B
appears to be one of first impression.  








After
this lawsuit was filed, HHSC proposed in 2004 some minor changes to Section
355.8551(6).[3]  The only
change to the challenged portion of the 2003 Rule was to change the term Adelivery fee@ to Adelivery incentive.@  The trial court held that the revised
Section 355.8551(6), which became effective in 2004,[4]
superceded the 2003 Rule and rendered appellants= challenge to the 2003 version moot.  We hold
that the 2004 revision to Section 355.8551(6) was an amendment to the 2003
Rule; the revision was not a repeal by implication of the 2003 Rule nor did it
substantively change the challenged provision.  Therefore, the controversy is
not moot.  To hold otherwise would mean that an agency could moot a case by
amending a rule and replacing it with one that differs only in some
insignificant respect.  See Ne. Fla. Chapter of the Associated Gen.
Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656 (1993)
(holding that defendant city did not moot a case by replacing an ordinance with
one that differed only in an insignificant respect).  We reverse and remand for
a trial on the merits.

Background
Facts

Medicaid
is a health insurance program, jointly operated and funded by the federal and
state  governments, for the medical care of low-income and other eligible
persons.  El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm=n, No. 05-0372, 2007 WL
2457848 (Tex. Aug. 31, 2007).  In Texas, HHSC is the agency charged with the
responsibility for operating the program to conform with the federal
guidelines.  Id. at *1.

In
1998, the Texas Medicaid Vendor Drug Program rules were transferred
administratively by the Texas Register from Title 25 of the Texas
Administrative Code to Title 1.  See 23 Tex. Reg. 12660, 12701 (1998).  Former Section 35.611(6),[5] which
provided a delivery fee of $.15 per prescription on all Medicaid prescriptions
filled, became Section 355.8551(6) without change.  Former Section 35.611(6)
and its replacement, Section 355.8551(6), provided:

A
delivery fee shall be paid to approved providers offering no-charge
prescription to all Medicaid recipients requesting delivery.  The delivery fee
is $.15 per prescription and is to be paid on all Medicaid prescriptions
filled.  This delivery fee is not to be paid for over-the-counter drugs, which
are prescribed as a benefit of this program.

 

In
2002, HHSC proposed and adopted several changes to Section 355.8551, including
one that would have completely eliminated the $.15 delivery fee in Section
355.8551(6).  HHSC stated that the adopted rule made several changes to Section
355.8551, including

[I]t changes the
method of reimbursement for prescription delivery by eliminating the delivery
fee and including prescription delivery expenses in the overall fixed component
of the dispensing fee for all providers.

 

The Texas
Pharmacy Association, the National Association of Chain Drug Stores, and the
Long Term Care Pharmacy Alliance opposed the adoption of the proposed
amendments.  See 27 Tex. Reg. 11739-42 (2002) (to be codified at 1 Tex. Admin. Code ' 355.8551).   The revised Section
355.8551 was to become effective on December 16, 2002.








To
prevent the revisions from becoming effective, the Texas Pharmacy Association
and other pharmacies filed a declaratory judgment action contending that the
revisions were not adopted in compliance with the APA and seeking an injunction
to keep in place the last valid rule (the August 1997 version of Section 35.611(6)
that became Section 355.8551(6)).  See Tex. Pharmacy Ass=n v. Tex. Health &
Human Servs. Comm=n
et al, No. GN-204-486 in the 126th District Court of Travis County, Texas.  The district court entered a temporary restraining order that enjoined HHSC and its
Commissioner from implementing the rule amendments.  The lawsuit was ultimately
nonsuited on May 20, 2003, because HHSC filed a new proposed rule on May 12,
2003, that would repeal Section 355.8551 (as revised in 2002) and promulgate a
new Section 355.8551.  See 28 Tex. Reg. 4032-33 (2003) (1 Tex. Admin. Code ' 355.8551) (proposed May
12, 2003).

The
2003 Adoption of Rule 355.8551(6)

On
May 12, 2003, HHSC proposed a repeal of the 2002 version of Section 355.8551
and the adoption of a new Section 355.8551.  See 28 Tex. Reg. at
4032-33.  The proposed new Section 355.8551 was to include a change to Section
355.8551(6) that would read as follows:

A
delivery fee shall be paid, subject to the availability of appropriated
funds, to approved providers offering no-charge prescription to all
Medicaid recipients requesting delivery.  The delivery fee is $.15 per
prescription and is to be paid on all Medicaid prescriptions filled.  This
delivery fee is not to be paid for over-the-counter drugs, which are prescribed
as a benefit of this program (emphasis added).

 

Id. at 4033.

 

In
its preamble to the new Section 355.8551, HHSC stated that A[t]he changes are intended
to reinstate program policy in effect before December 15, 2002.@  28 Tex. Reg. at 4032. 
HHSC made it clear that it was repealing the 2002 version of Section 355.8551(6)
and returning to the language of former Section 35.611(6) and its replacement,
Section 355.8551(6),[6] except that
HHSC was adding the emphasized phrase Asubject
to the availability of appropriated funds.@ 
Id.  








Thus,
in the proposed 2003 Rule, deliveries to nursing homes and other institutions
were included in the $.15 delivery fee.  But in the adopted 2003 Rule, those
deliveries were eliminated from the delivery fee.  Section 355.8551(6), as
adopted on September 15, 2003, to be effective on October 5, 2003, provided:

A
delivery fee shall be paid, subject to the availability of appropriated
funds[,] to approved providers who certify in a form prescribed by the
Commission that the delivery services meet minimum conditions for payment of
the fee.  These conditions include: making deliveries to individuals rather
than just to institutions, such as nursing homes; offering no-charge
prescription delivery to all Medicaid recipients requesting delivery in the
same manner as to the general public; and, publicly displaying the availability
of prescription delivery services at no charge.  The delivery fee is $.15 per
prescription and is to be paid on all Medicaid prescriptions filled.  This
delivery fee is not to be paid for over-the-counter drugs, which are prescribed
as a benefit of this program (emphasis added).

 

28 Tex. Reg.
8312-13. 

Tex. Hum. Res. Code Ann. ch. 32 (Vernon
2001 & Supp. 2006) and Tex. Gov=t Code Ann. ' 531.021 (Vernon Supp. 2006) provide HHSC with the authority to administer
the Texas Medicaid Vendor Drug Program and to adopt rules to administer the
State=s medical
assistance program.  Section 32.021(c) requires HHSC to establish methods of
administration and to adopt necessary rules for the proper and efficient
operation of the State=s
medical assistance program.  Section 32.028(a) provides that HHSC shall adopt
reasonable rules and standards governing the determination of fees, charges,
and rates for medical assistance payments.  Section 32.0281(a).  Section
32.0281(d) provides that HHSC must follow the procedures for adopting rules
that are set forth in the Texas Administrative Procedure Act found in Chapter
2001 of the Texas Government Code (the APA).

Appellants= Lawsuit Is Filed

In
their original petition for declaratory judgment filed in December 2003,
appellants alleged that HHSC and its Commissioner failed to follow the
procedures set forth in the APA when HHSC adopted the 2003 Rule. They alleged
that HHSC failed to do the following:

(1)
to give 30 days notice of its intention to adopt the substantive change
eliminating the $.15 delivery fee for deliveries to nursing homes and other
institutions as required by Section 2001.023;

 








(2)
to provide in its order adopting the 2003 Rule a reasoned justification for the
2003 Rule as required by Section 2001.033;

 

(3)
to hold a public hearing as required by Section 32.082 of the Human Resources
Code before adopting the changed rates.

 

Appellants also
alleged that the 2003 Rule was inconsistent with contracts that existed between
HHSC and the pharmacy providers in the Medicaid Vendor Drug Program.  Appellants, therefore,
requested an injunction prohibiting HHSC from implementing the 2003 Rule and
ordering HHSC to pay the delivery fee to all providers in the Medicaid Vendor
Drug Program that offer free delivery to Medicaid recipients.  In summary,
appellants claimed that HHSC deprived appellants of an opportunity to argue
against the new rule provision that became the 2003 Rule and eliminated the
$.15 delivery fee for deliveries to nursing homes and other institutions.  See
Section 2001.029(a) of the APA (an agency is required to give all
interested persons a reasonable opportunity to submit data, views, and
arguments before adopting a rule).

In
its original answer, HHSC set forth a plea to the jurisdiction, contending that
HHSC was immune from suit for appellants=
breach of contract claim.  See Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401 (Tex. 1997).  HHSC asserted that any action involving a claimed breach of
contract by an agency must be brought before the state agency under Tex. Gov=t Code
Ann. ch. 2260 (Vernon  2000 & Supp. 2006).  HHSC also pleaded an affirmative
defense, asserting that appellants=
claims for damages and attorney=s
fees were barred by sovereign immunity.  

Amendment
of Section 355.8551(6) in 2004

In
August 2004, HHSC proposed an amendment to Section 355.8551(6) that changed the
term Adelivery fee@ to Adelivery incentive,@ delineated Alegend
drugs@ as the type of
drugs that qualify for a delivery incentive, and added a provision for a Ageneric drug dispensing
incentive.@  29 Tex.
Reg. at 8055-56.  The amended Section 355.8551(6) was adopted in November
2004.  29 Tex. Reg. 10503 (2004).  The elimination of the $.15 delivery fee for
deliveries to nursing homes and other institutions was not dealt with in the
2004 amendment, and that provision remained unchanged.








In
April 2005, appellants filed a motion for partial summary judgment, asking the
trial court to enter judgment that HHSC had eliminated the $.15 delivery fee
for deliveries to nursing homes and other institutions by adopting a rule that
did not comply with the terms and provisions of the APA.  In their motion,
appellants also requested a judgment that the Section 355.8551(6) that existed
prior to the 2003 Rule be declared to be in effect and asked for the injunction
sought in their original petition.  Appellants then filed an amended original
petition for declaratory judgment and an application for injunctive relief that
essentially tracked their original petition.

HHSC
filed a plea to the jurisdiction and response to appellants= motion for partial summary
judgment.  In its plea to the jurisdiction, HHSC first urged that sovereign
immunity barred appellants=
contract and damage claims.  HHSC then raised a standing issue, claiming that
appellants could not establish a vested interest in the delivery fee incentive
because (1) the vendor drug program is limited by the availability of
appropriated funds and (2) the delivery fee is only available to Aapproved providers@ who are classified
according to Pharmacy Delivery Evaluation Forms that provide that a delivery Ato nursing homes or other
similar group facilities does not constitute delivery.@ Finally, HHSC asserted that this case was
moot because the 2004 Section 355.8551(6) replaced the 2003 Rule.[7]

At
the hearing on HHSC=s
plea to the jurisdiction, HHSC relied on Pantera Energy Co. v. Railroad
Commission of Texas, 150 S.W.3d 466 (Tex. App.CAustin 2004, no pet.), and Texas Department
of Health v. Long, 659 S.W.2d 158 (Tex. App.CAustin
1983, no pet.), to support its contention that this controversy was moot.  The
trial court granted HHSC=s
plea to the jurisdiction, stating to the parties that this matter was moot.

The
Trial Court=s
Order and Letter Ruling

The
trial court=s order
granting the plea to the jurisdiction does not state a basis for the court=s ruling.  In a letter sent
to counsel prior to entry of the order, the trial court stated that it was Agranting the plea to the
jurisdiction because the matter [was] moot.@ 
The trial court explained that the matter was moot because, during the pendency
of the lawsuit, HHSC replaced the 2003 rule with the 2004 amended Section
355.8551(6).  








As
a preliminary matter, we must determine the effect, if any, of the trial court=s letter ruling.  There is
authority that holds that a letter ruling issued prior to the entry of the
trial court=s order is
not competent evidence of the basis for the trial court=s judgment.  Cherokee Water Co. v. Gregg
County Appraisal Dist., 801 S.W.2d 872, 878 (Tex. 1990).  Nevertheless, we
considered such a letter ruling in Kendrick v. Garcia, 171 S.W.3d 698
(Tex. App.CEastland
2005, pet. denied), distinguishing Cherokee Water Co., but refused to
consider a trial court=s
letter in Evans v. Smith, No. 11-04-00263-CV, 2006 WL 133701 (Tex. App.CEastland Jan. 19, 2006, no
pet.), relying on Cherokee Water Co. and Davis v. Huey, 571
S.W.2d 859, 862 (Tex. 1978) (trial court order will be upheld on any applicable
theory supported by the record).  We believe it appropriate to consider the
trial court=s letter
ruling in this case.  

The
trial court stated that it considered the matter moot because the 2004
amendment to Section 355.8551(6) replaced the 2003 Rule and the 2003 Rule no
longer exists.  Both parties have treated the trial court=s ruling as having been
based on mootness.  In reviewing the record, we do not see any other applicable
theory that would support the trial court=s
ruling.

Analysis

HHSC
argues that the trial court was correct because appellants are seeking to invalidate
an expired agency rule.  We disagree.  The October 2003 version of Section
355.8551(6) still exists in an amended form (as amended in 2004).  HHSC in its
proposed rules in 29 Tex. Reg. 8055 and in its preamble to the November 2004
adoption order (29 Tex. Reg. 10503) stated that it was adopting amendments to
Section 355.8551(6), as compared to HHSC=s
preamble statement in its May 2003 notice that it was repealing Section
355.8551(6) and reinstating a program policy in effect before December 15,
2002.  The minor amendments in 2004 did not repeal or replace the portion of
Section 355.8551(6) that appellants complain about.  

HHSC
argues that the circumstances in this case are similar to the sequence of
events in Pantera Energy and Long.  Those cases are inapposite
because they involved changes to procedural rules, not substantive changes to a
rule or minor amendments to a rule.  In addition, the challenge in those cases
was not as to whether the rules had been properly adopted according to
procedures required by the APA.








In
Pantera Energy, the issue presented in three combined lawsuits was
whether an amendment to the Railroad Commission=s
notice rule was procedural in nature and, thus, applicable to pending
applications.  If procedural, Pantera had to give notice to the operators and
owners of mineral interests on adjacent offsetting tracts.  When Pantera filed
forty-eight applications seeking to dissolve pooled gas units, the Railroad
Commission determined that the applications were an attempt to obtain density
exceptions without complying with Railroad Commission rules.  The Railroad
Commission informed Pantera that it had to notify offset operators and owners
of unleased mineral interests of the pending applications.  While the
forty-eight applications were pending, Pantera filed a declaratory judgment
action against the Railroad Commission, seeking a declaration that the then
current Rule 38(d)(3) of the Commission did not require such notice to be given
and that under that rule Pantera was not required to give notice to anyone
except itself.  While the declaratory judgment action was pending, the Railroad
Commission denied Pantera=s
applications because Pantera refused to give the notice that the Commission had
required.  

Pantera
then filed two suits for judicial review challenging the Commission=s dismissals of its
forty-eight applications.  While the three causes were pending, the Railroad
Commission amended Rule 38(d)(3) to require the notice that it had requested
Pantera provide.  The issue in all three cases was  the same:  A[W]hether the amendment to
Rule 38(d)(3) [was] procedural in nature and thus applicable to the pending
applications.@  Pantera
Energy, 150 S.W.3d at 469.  The Austin Court of Appeals held that the
amendment was a procedural change, not a substantive change.  Because the new
notice rule was procedural in nature, it could replace the old rule and be
applied to pending litigation.  That rendered the issue in Pantera Energy
moot.








The
Austin Court of Appeals in Pantera Energy observed that Pantera
Energy was a mirror image of the situation the court had faced in Long,
where the legal issue presented in district court was whether the Department of
Health was required by its rules to obtain a certificate from the local
commissioners= court
before granting the City of Austin=s
application for a municipal landfill.  Under the Department=s rules in effect at the
time the city filed its application, the city was required to include in its
application a written confirmation from the commissioners= court that access roads
could safely handle the additional traffic that would result from the
contemplated landfill operations.  Long obtained a temporary injunction
prohibiting the Department and the city from proceeding with the scheduled
public hearing for the landfill site until the certificate was obtained.  While
the appeal from the temporary injunction was pending, the Department repealed
its rule requiring the certification.  The Austin Court of Appeals in Long held
that agency requirements for inclusion, or not, of items in an application for
a landfill are procedural.  Thus, the new rule would retroactively govern any
pending landfill application.  Because the only legal issue was whether an
application had to have the certificate, the Austin court in Long held
that the issue was moot.  The Pantera Energy court explained the
principle in both cases as follows:

Although New Rule
38(d)(3) added a requirement while the amended rule in Long eliminated
one, the same principle applies to future steps in pending litigation: that no
litigant has a vested right in a procedural remedy.

 

Pantera
Energy, 150 S.W.3d at 472-73.

In
the case before us, the 2003 change in Section 355.8551(6) was substantive, not
procedural.  Appellants=
complaint is that the substantive change in the 2003 Rule was not adopted
pursuant to the requirements of the APA.  The question is whether the minor
amendments to the 2003 Rule that were made in 2004 rendered this matter moot. 
We conclude that the matter is not moot because the minor amendments in 2004
neither repealed the 2003 version of Section 355.8551(6) nor substantively
changed the portion of the 2003 version that is the subject of appellant=s complaint.








The
decision of the United States Supreme Court in Northeastern Florida Chapter
of the Associated General Contractors of America v. City of Jacksonville,
Florida, 508 U.S. 656 (1993),  provides the guide for this case.  The City
of Jacksonville had adopted an ordinance that accorded preferential treatment
to certain minority-owned businesses in the award of city contracts.  The
petitioner had filed suit claiming that Jacksonville=s ordinance violated the Equal Protection
Clause of the Fourteenth Amendment and seeking declaratory and injunctive
relief.  The district court entered summary judgment for petitioner, but the
court of appeals reversed, holding that the petitioner lacked standing to
challenge the ordinance establishing the set-aside program.  Shortly after the
Supreme Court granted certiorari, the city repealed the ordinance and replaced
it with another ordinance that differed from the first ordinance by limiting
the application of the ordinance to only two minority groups, by changing from
10% set-aside to Aparticipation
goals@ ranging from 5%
to 16%, and by providing five alternative methods for achieving the
participation goals instead of only one method.  Before addressing whether
petitioner had standing, the Supreme Court had to decide whether the issue was
moot.  

The
Supreme Court held that the controversy was not moot.  The Court stated that it
did not matter that the new ordinance differed in certain respects from the old
one:

Nor does it matter
that the new ordinance differs in certain respects from the old one.  City
of Mesquite [v. Aladdin=s
Castle, Inc., 455 U.S. 283 (1982),] does not stand for the proposition that
it is only the possibility that the selfsame statute will be enacted
that prevents a case from being moot; if that were the rule, a defendant could
moot a case by repealing the challenged statute and replacing it with one that
differs only in some insignificant respect.  The gravamen of petitioner=s complaint is that its
members are disadvantaged in their efforts to obtain city contracts. 

 

City of
Jacksonville, 508 U.S. at 662.  The Supreme Court reasoned that the
ordinance had not been Asufficiently
altered so as to present a substantially different controversy from the one the
District Court originally decided.@ 
Id. at 662, n.3.  The dissent agreed with the majority that a defendant
cannot moot a case simply by altering the law Ain
some insignificant respect@
but was of the opinion that the new ordinance had made material changes and was
substantially different from the original ordinance.  Id. at 670.  In
our case, it is clear that the change in the 2004 version of Section
355.8551(6) was insignificant.  

The
gravamen of appellants=
complaint is that HHSC adopted a rule doing away with the $.15 delivery fee for
deliveries to nursing homes and other institutions without following the
requirements of the APA.  The trial court in its letter noted that appellants
could have challenged the replacement rule if they Abelieve[d] that the replacement rule was also
improperly adopted.@ 
The problem with that reasoning is that HHSC followed the requirements of the
APA in adopting the minor amendments in 2004.  To adopt the trial court=s approach would mean that
an agency can moot any challenge to a substantive change in a rule, made
without following the requirements of the APA, by adopting a minor amendment to
the new rule (following the requirements of the APA) after a suit is filed.  To
allow such an easy way for an agency to moot a challenge would defeat the
purposes of the APA.  See Section 2001.001.








Repeal
of a statute by implication is not favored, Gordon v. Lake, 356 S.W.2d
138, 139 (Tex. 1962), and will not be decreed unless the statutes in question
are positively repugnant or manifestly inconsistent.  Mercantile Nat=l Bank at Dallas v.
Langdeau, 371 U.S. 555 (1963).  The same should be said of rules adopted by
agencies.  There is no conflict between the challenged portion of the 2003
version of Section 355.8551(6) and the 2004 version of Section 355.8551(6); the
2004 version did not repeal the 2003 version.  Appellants= challenge is not moot. 
Appellants= first issue
is sustained.

Because
the trial court held that it did not have jurisdiction, the court did not rule
on appellants= motion
for partial summary judgment.  Therefore, we need not address appellants= second issue that the
trial court Aerred in
impliedly denying appellants=
motion for partial summary judgment.@

This
Court=s Ruling

We
reverse and remand for a trial on the merits.

 

 

TERRY McCALL

JUSTICE

 

September 20,
2007

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]The Administrative Procedure Act is found in Tex. Gov=t Code Ann. ch. 2001 (Vernon 2000 & Supp. 2006). Section
2001.035 provides that a state agency must adopt a rule in substantial
compliance with the requirements of Sections 2001.0225 through 2001.034.     





[2]See 28 Tex.
Reg. 8312-13 (2003) (1 Tex. Admin. Code  ' 355.8551) (Tex. Health & Hum. Servs. Comm=n).         





[3]See 29 Tex.
Reg. 8055-56 (2004) (1 Tex. Admin. Code  ' 355.8551) (proposed August 9, 2004).





[4]See  29 Tex.
Reg. 10503 (2004) (to be codified as an amendment to 1 Tex. Admin. Code  ' 355.8551(6)).





[5]See 22 Tex.
Reg. 5640 (1997), adopted 22 Tex. Reg. 7347 (1997) (to be codified at 25 Tex. Admin. Code ' 35.611(6)). 

   





[6]The earlier version of Section 355.8551(6) provided:

 

A delivery fee shall be paid to approved providers
offering no-charge prescription to all Medicaid recipients requesting
delivery.  The delivery fee is $.15 per prescription and is to be paid on all
Medicaid prescriptions filled.  This delivery fee is not to be paid for
over-the-counter drugs, which are prescribed as a benefit of this program.

 





[7]HHSC also urged that pharmacies that are not Aapproved providers@ do
not have a vested interest in the delivery incentive; therefore, this was an
additional basis urged for mootness.  This is a standing argument and may be
addressed at the outset of a trial on the merits.  Likewise, the issue of
whether the Pharmacy Delivery Evaluation Forms modify HHSC=s rules need not be dealt with here.  We are
addressing only whether the 2004 amendment to Section 355.8551(6) rendered the
controversy over the adoption of the 2003 Rule moot.