COUNTY OF DALLAS TAX COLLECTOR, Dallas County Community College District, Parkland Hospital District, Dallas School Equalization Fund, City of Dallas, Dallas Independent School District, Dallas County Education District, and Downtown Improvement District No. 1, Appellants,

v.

ROMAN CATHOLIC DIOCESE OF DALLAS, Appellee.

No. 05–99–01608–CV.

Court of Appeals of Texas, Dallas.

Jan. 25, 2001.

Edward Lopez, Jr., Linebarger Heard Goggan Blair Graham Pena Sampson, Dallas, for Appellants.

Thomas M. Melsheimer, M. Brett Johnson, Fish & Richardson P.C., for Appellee.

Before Justices LAGARDE, BRIDGES and MARTIN RICHTER.

## OPINION

MARTIN RICHTER, Justice.

The County of Dallas taxing authorities ("Taxing Authorities") brought suit against the Roman Catholic Diocese of Dallas ("Diocese") seeking collection of delinquent ad valorem taxes for the years 1987 through 1992. The Diocese asserted it is not liable for the accrued ad valorem taxes because it is a religious organization using property primarily for religious purposes. The Diocese moved for summary judgment, asserting that the leasehold owner rather than the Diocese is liable for the unpaid taxes.

The trial court granted summary judgment in favor of the Diocese, holding it is exempt from tax liability under sections 25.07 and 32.07 of the Texas Property Tax Code. The Taxing Authorities appeal, contending the trial court erred in granting summary judgment because it incorrectly determined sections 25.07 and 32.07 absolved the Diocese of liability for the unpaid taxes. For the reasons set forth below, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

## Factual and Procedural Background

The Diocese acquired the subject property in June of 1890 as a site for a church. The property is approximately one and one-half acres located in the City of Dallas. It is bounded by Ross Avenue on the south, Crockett Street on the east, Flora Street on the north, and Pearl Street on the west. Shortly after acquisition of the property, the Cathedral Guadalupe de Santuario was constructed on the southwestern portion of the land. The cathedral occupies approximately one-third of the property. It is undisputed that the Diocese maintained possession of the entire property from its acquisition in 1890 until October 30, 1985. It is also undisputed that during this period the entire property was exempt from ad valorem taxation by all taxing authorities pursuant to property tax code section 11.20 and its predecessor statutes.

In 1985, developer King Laughlin approached the Diocese and proposed that it lease an L-shaped portion of the property, located north and east of the cathedral, to a partnership composed of King Laughlin and Bright Realty ("Bright Laughlin"). On October 30, 1985, the Diocese and Bright Laughlin entered into a ground lease agreement for the L-shaped portion

of the property. The lease provided that Bright Laughlin would:

(1) construct an underground parking garage under a portion of the leased parcel;

(2) construct an office building on the eastern portion of the leased parcel; and

(3) after completing the garage, release its possessory interest in the surface of the northeastern portion of the leased parcel and construct an education and administration building for the Diocese.

Upon completing construction, Bright Laughlin would hold a leasehold interest in (1) the ground and subsurface of the portion of the property upon which the office building was to be located and (2) the subsurface of the portion of the leased parcel where the garage is located. In addition, Bright Laughlin would own the garage and office building for the duration of the lease. The Diocese would continue as the fee simple owner of the entire property and own the education and administration building unencumbered by the ground lease.

Bright Laughlin began construction of the parking garage in 1986 and completed it in 1987. At that time, a dispute arose regarding the tax exempt status of the L-shaped portion of property leased by the Diocese to Bright Laughlin. The Dallas County Appraisal District ("DCAD") withdrew the tax exemption for this property and denied an application by the Diocese to reinstate the exemption for the years 1986 through 1989. Thereafter, Bright Laughlin pursued a protest with the Dallas County Appraisal Review Board ("DCARB") and, following an adverse determination by the review board, filed suit in district court. Bright Laughlin also joined the Diocese as a co-plaintiff. In 1992, the parties settled the suit and entered into an agreed judgment. The agreed judgment provided that the ap-

praisal district would assign two additional account numbers to the L-shaped property for the tax years 1987 through 1991. Formerly, the DCAD listed the property in two accounts, one for the land and a second for the improvements (consisting of the underground parking garage). The agreed judgment expanded the number of tax accounts covering the leased portion of the property to four. Thereafter, three accounts covered the land and one improvement account covered the underground parking garage. Each of the land accounts was defined as consisting of a certain square footage of land and further described in an attached legal description. The first of the land accounts covered the property on which Bright Laughlin planned to build the education and administration building for the Diocese. The second covered the land on which Bright Laughlin planned to build the office building, and the third consisted of the land which overlies the parking garage. Additionally, as part of the agreed judgment, taxable values were assigned to each of the four accounts. The first land account was noted as tax exempt under section 11.20 of the property tax code and was assigned a taxable appraised value of zero. The second and third land accounts were noted as "non-exempt" and were assigned taxable appraised values of in excess of $2 million and $1 million, respectively. The improvement account also was noted as non-exempt and was assigned values that escalated by tax year. The agreed judgment did not attempt to assign any taxable value to the leasehold and, in fact, makes no reference to the leasehold interest.

Due to the collapse of the Dallas real estate market, the office building was never built. Nor did Bright Laughlin construct the education and administration building. Bright Laughlin defaulted on its rental obligations to the Diocese, and the

Diocese terminated the ground lease on December 30, 1993. Moreover, Bright Laughlin failed to pay ad valorem taxes associated with the property for the years 1987 through 1992, as required by its lease with the Diocese. The ad valorem taxes on the entirety of the leased parcel became delinquent, and the Taxing Authorities filed three separate law suits to collect the delinquent taxes due on the "non-exempt" accounts. The Diocese moved for and the trial court granted summary judgment in its favor in the suit to collect delinquent taxes on the portion of the property where the office building was to be built. The suits to collect delinquent taxes for the parking garage and the land overlying the garage were consolidated into the present action.

Following consolidation, the Diocese filed a motion for summary judgment on the grounds the Diocese is not liable for taxes upon the leased parcel under section 25.07 of the property tax code and suit is barred pursuant to the doctrines of res judicata and collateral estoppel. The Diocese's original motion for summary judgment was denied. The Diocese later filed an amended motion for summary judgment containing new legal arguments. The trial court granted the Diocese's amended motion for summary judgment. The trial court provided the following basis for its judgment:

> [T]he court is of the opinion that the motion should be granted on the grounds that under Texas Tax Code §§ 25.07 and 32.07, the Diocese as the owner of property leased to another party for a term of more than one year has no liability for the property taxes imposed during the term of the lease by the taxing authorities in this lawsuit.

The Taxing Authorities contend the trial court erred in granting summary judgment because (1) property tax code sections 25.07 and 32.07 do not relieve the Diocese of tax liability for the leased parcels, and (2) the Diocese failed to carry its burden of establishing it was entitled to summary judgment. We agree that the trial court's judgment cannot be supported on the stated grounds and the Diocese failed to establish it was entitled to judgment as a matter of law.

## Standard of Review

The party moving for summary judgment has the burden of showing that, except as to the amount of damages, it is entitled to judgment as a matter of law and no genuine issue of material fact exists. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 657 (Tex.App.—Dallas 1992, no writ). In a summary judgment case, the question on appeal is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Once the movant conclusively establishes it is entitled to judgment as a matter of law, the non-movant must present evidence to raise a genuine issue of material fact. *Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 876 (Tex.App.—Dallas 1990, no writ).

## Analysis

Generally, tax liability rests with the owner of property encumbered by a leasehold or other interest. Tex.Tax Code Ann. § 25.06 (Vernon 1994). When non-

exempt property is leased, the lessor, not the lessee, is responsible for the taxes that accrue on the full value of the property. *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 875 (Tex. 1990). The lessor's interest in the property includes the present right to receive income from the property as well as the right to receive the property back upon termination of the lease. *Id.* The value of the entire fee necessarily contains the lesser value of the leasehold the fee contains. *Dallas Cent. Appraisal Dist. v. Jagee Corp.*, 812 S.W.2d 49, 53 (Tex.App.—Dallas 1991, writ denied). Unless the leasehold involves exempt property, the leasehold is not independently taxed, but rather, it is subsumed within the value of the fee simple estate. *Id.* at 52.

Conversely, if one leases exempt property, it is the leaseholder that is subject to tax. Section 23.13 of the property tax code provides:

> A taxable leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest is appraised at the market value of the leasehold or other possessory interest.

TEX.TAX CODE ANN. § 23.13 (Vernon 1992). In the event a leasehold in exempt property is for at least one year, section 25.07 provides that the taxable leasehold shall be listed in the appraisal records in the name of the leaseholder.[1] Consequently, if the encumbered estate is exempt, the lease-

hold interest is valued and taxed separately from the fee, and the leasehold owner is liable for the property taxes. *Cherokee Water*, 801 S.W.2d at 875. In the event the leaseholder of a taxable leasehold fails to pay property taxes, the owner of the underlying estate incurs no liability for the unpaid taxes. *City of Beaumont v. Fertitta*, 415 S.W.2d 902, 911 (Tex.1967) (holding tax was not assessable against tax exempt city which leased property, but tax was assessable against lessees); *Panola County Appraisal Review Bd. v. Pepper*, 936 S.W.2d 10, 12 (Tex.App.—Texarkana 1996, no writ) (holding leaseholds on exempt land were to be taxed to the leasehold owner).

In the present case, the trial court held that under section 25.07 of the property tax code, the Diocese as the owner of property leased to another party for a term of more than one year has no liability for the property taxes imposed during the term of the lease. The record, however, does not support the trial court's stated grounds for relief.[2]

Preliminarily, we note that section 25.07 does not purport to impose any tax liability. Rather, it simply states how certain possessory interests in exempt property are to be listed in the appraisal records. *Cf. Pepper*, 936 S.W.2d at 13 (construing section 25.07 to provide that leaseholds are taxable if the duration of the lease may be at least one year). Nonetheless, the "listing" provided for in section 25.07 has the effect, in an appro-

---

1. Section 25.07(a) states: "Except as provided by Subsection (b) of this section, a leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest shall be listed in the name of the owner of the possessory interest if the duration of the interest may be at least one year." TEX.TAX CODE ANN. § 25.07(a) (Vernon 1994).

2. The trial court also cites section 32.07 in support of its judgment. *See* TEX.TAX CODE ANN. § 32.07 (Vernon Supp.2001). The Diocese concedes, however, that section 32.07 is "inapplicable to the facts of this case." Therefore, section 32.07 cannot support the trial court's judgment.

priate instance, of imposing tax liability. A plain reading of the provision provides that it is applicable *only* when the real property encumbered by the leasehold "is exempt from taxation to the owner of the estate." The record in this case is bereft of any evidence from which the trial court could have determined as a matter of law that the real property in dispute was exempt from taxation. Although the Diocese in its brief repeatedly asserts that the property is exempt, it fails to cite to any evidence in the record establishing entitlement to the exemption. There is no evidence in the record that the Diocese met the standard for a religious exemption for this property after it leased the property to a commercial developer. *See* TEX.TAX CODE ANN. § 11.20 (Vernon Supp. 2001) (providing, *inter alia,* that religious organization qualifies for tax exemption when real property is "reasonably necessary for engaging in religious worship"). The sole affidavit filed by the Diocese in support of its motion for summary judgment pointedly states only that the property was exempt through 1985; it does not address the tax exempt status of the property after that date.

After reviewing the record, it appears the only evidence that supports the position of the Diocese consists of certain appraisal records which list Bright Laughlin as the owner of the property on the tax rolls. It would be appropriate under the tax code to list Bright Laughlin as the owner only if the underlying fee was tax exempt and the relevant property interest subject to tax was the leasehold. We cannot conclude that the mere listing of Bright Laughlin as the owner on the tax rolls is sufficient to establish as a matter of law that the encumbered estate is tax exempt.

 The taxing authorities are not bound by an incorrect listing on the tax rolls. "A mistake in the name or address of an owner does not affect the validity of the appraisal records ... or of the tax imposed" but may be corrected as provided by the code. TEX.TAX CODE ANN. § 25.02(b) (Vernon Supp.2001); *see City of Dallas v. Dean Carlton, Inc.,* 611 S.W.2d 445, 447 (Tex.Civ.App.—Dallas 1980, no writ). Although the listing may be some evidence that the Taxing Authorities intended to tax the leasehold because the underlying property was exempt to the fee owner, it is not determinative in this case because there is contradictory evidence that the listing is in error, namely the 1992 agreed judgement.

The record reflects that DCAD withdrew the religious tax exemption for the entire leased parcel after 1985, based on the ongoing development, and sought to tax the entirety of the real property, not simply the leasehold interest. To settle the dispute regarding the exemption, the parties entered into an agreed judgment in 1992. The judgment reinstated the tax exemption for the portion of the leased property where the planned education and administration facility was to be built. As to the portions of the property subject to this suit, the judgment specifically provides that the "land and improvements" are non-exempt and taxable. There is no reference to the leasehold in the judgment, and there is no evidence in the record that the Taxing Authorities ever sought to value only the leasehold interest and not the fee.

 It is this conflict between the manner in which the property was listed on the tax rolls, in the name of the lessee, and the insistence of the Taxing Authorities in taxing the real property, that is the crux of the dispute between the parties. The Diocese assumes it is only the leasehold that was subject to tax and, therefore, asserts it is not liable for unpaid ad valo-

rem property taxes on the leasehold. *E.g., Pepper,* 936 S.W.2d at 12 (holding leaseholds on exempt land were to be taxed to the leasehold owner); Op. Tex. Att'y Gen. No. JM–1049 (1989) (stating that if a leasehold estate is subject to taxation, and the lease is terminated or forfeited for failure to comply with the lease agreement, the "person owning the possessory interest when the assessment is imposed is the person who remains liable for any unpaid taxes"). The Taxing Authorities contend that the real property is not exempt and therefore the Diocese, as fee owner, remains responsible for the property taxes, regardless of any private agreement between the Diocese and its lessee. *E.g., Cherokee Water,* 801 S.W.2d at 875; *Jagee Corp.,* 812 S.W.2d at 51. As the movant, the Diocese has the burden of establishing it is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c). The Diocese failed to meet its burden. The Diocese has not established that the real property was exempt after 1985. At best, the conflict between the tax rolls and the agreed judgment presents a material fact issue as to whether the relevant taxable interest for the time period in dispute was the leasehold or the fee. Accordingly, we conclude the trial court erred in granting summary judgment for the Diocese.

The Taxing Authorities also request that we render judgment in their favor based on the power of an appellate court to render judgment which should have been entered by the trial court. TEX. R.APP.P. 43.2(c). Setting aside whether the record would support a judgment in their favor, the Taxing Authorities' argument ignores the fact that the trial court did not have before it a cross motion for summary judgment. The only appropriate ruling the trial court could have made was to deny the Diocese's motion for summary judgment. We cannot grant appellant more relief than was requested of the trial court. *See CRA, Inc. v. Bullock,* 615 S.W.2d 175, 176 (Tex.1981).

The Taxing Authorities also request attorney's fees; however, they cite no authority for their request, and we are aware of none. Accordingly, the request for attorney's fees is denied.

We reverse the judgment of the trial court and remand for further proceedings.