


November 4, 2002

The Honorable Patricia Gray
Chair, House Committee on Public Health
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0571

Re: Whether a building owned and operated by a municipal hospital authority, but leased in part to a private business, is subject to the exclusive public use requirement of article XI, section 9 of the Texas Constitution, and related questions (RQ-0547-JC)

Dear Representative Gray:

On behalf of the Tomball Hospital Authority (the "Authority"), a municipal hospital authority operating a regional hospital, you generally ask whether an Authority-owned and operated building, leased in part to a private business for operation as a "long-term care hospital," is exempt from property taxes.[1] We conclude that the Authority's building must satisfy the exclusive public use requirement to qualify for tax exemption under article VIII, section 2 of the Texas Constitution and section 11.11(a) of the Tax Code. That requirement is not, as a matter of law, satisfied by the statutory tax-exemption language of the Authority's enabling statute, section 262.004 of the Health and Safety Code. To satisfy the exclusive public use requirement, the leased space must be used exclusively "for the health, comfort, and welfare of the public" served by the Authority. We cannot ultimately determine whether the proposed use of the leased space as a privately operated long-term care hospital satisfies the exclusive public use requirement because such a determination requires investigation and resolution of fact questions. Finally, we conclude that if the leased space is not used exclusively for public purposes, the Authority would be liable under the law for taxes assessed against the building.

## I. LEGAL BACKGROUND

### A. Constitutional Provisions

To provide a legal context for the Authority's specific questions, we review in some detail the state constitutional provisions exempting public property from ad valorem taxation. All real property is taxable unless exempt as required or permitted by the Texas Constitution. *See* TEX.

[1]Letter from Honorable Patricia Gray, Chair, House Committee on Public Health, to Honorable John Cornyn, Texas Attorney General at 1, 4 (May 7, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

CONST. art. VIII, § 1(b). Article XI, section 9 of the Texas Constitution exempts publicly owned property used for public purposes, *see id.* art. XI, § 9, and article VIII, section 2 permits the legislature to exempt public property, *see id.* art. VIII, § 2.

Article XI, section 9 exempts from taxation qualifying property by providing that "[t]he property of counties, cities and towns, owned and held only for public purposes, . . . and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation ." *Id.* art. XI, § 9. Article XI, section 9 is self-executing. *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945). To be tax exempt under this provision, property must be publicly owned; held only for public purposes; and devoted exclusively to the use and benefit of the public. *Satterlee v. Gulf Coast Waste Disposal Auth.*, 576 S.W.2d 773, 779 (Tex. 1978); *see also Hays County Appraisal Dist. v. Southwest Tex. State Univ.*, 973 S.W.2d 419, 422 (Tex. App.–Austin 1998, no pet.) (stating that article XI, § 9 requires public use of property be exclusive). While article XI, section 9 speaks specifically only of "property of counties, cities, and towns," the Texas Supreme Court held in *Lower Colorado River Authority v. Chemical Bank & Trust Co.*, 190 S.W.2d 48, 50 (Tex. 1945), that it extends to property of any governmental agency. Subsequent Texas Supreme Court opinions have questioned this holding, but the court has not expressly overruled it. *See Satterlee*, 576 S.W.2d at 779; *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 911, 913 (Tex. 1972).

Article VIII, section 2, on the other hand, authorizes the legislature to enact statutes to exempt qualifying property. It provides that "the legislature may, by general laws, exempt from taxation public property used for public purposes." TEX. CONST. art. VIII, § 2(a). This provision authorizes the legislature to exempt only publicly owned property used for public purposes. *See Leander Indep. Sch. Dist.*, 479 S.W.2d at 912. Pursuant to this provision, the legislature enacted section 11.11(a) of the Tax Code, which provides in part that "[e]xcept as provided by Subsections (b) and (c)[2] of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes." TEX. TAX CODE ANN. § 11.11(a) (Vernon 2001) (footnote added); *see also* Tex. Att'y Gen. Op. No. JM-1049 (1989) at 2-3 (legislature enacted section 11.11 pursuant to article VIII, section 2).

Unlike article XI, section 9, article VIII, section 2(a) and section 11.11(a) of the Tax Code do not expressly require *exclusive* public use. *See* TEX. CONST. art. VIII, § 2(a); TEX. TAX CODE ANN. § 11.11(a) (Vernon 2001); TEX. CONST. art XI, § 9; *see also Hays County Appraisal Dist.*, 973 S.W.2d at 423 (stating that article XI, § 9 requires exclusive public use, article VIII, § 2 does not). Significantly, however, the only appellate decisions considering claims for exemptions under section 11.11 for leases of hospital authority-owned buildings have not made that distinction. Rather, these cases articulate a single standard derived from the language of article XI, section 9 and Texas Supreme Court decisions construing that provision: to be tax exempt, property must be held only for public purposes and be devoted exclusively to the use and benefit of the public. *See Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849, 851 (Tex. App.–Dallas 1987,

---

[2]Subsections (b) and (c) provide for limited taxation of land owned by the Permanent University Fund and by counties. *See* TEX. TAX CODE ANN. § 11.11(b)-(c) (Vernon 2001).

writ ref'd n.r.e.); *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 284 (Tex. App.–Fort Worth 1986, writ ref'd n.r.e.).

**B. Appellate Decisions**

In a 1987 decision, the Dallas Court of Appeals determined that a hospital authority-owned medical office building, leased in part to hospital staff physicians and utilized for their private practices, was not tax exempt under section 11.11(a) of the Tax Code. *See Dallas County Appraisal Dist.*, 730 S.W.2d at 851. The hospital authority contended that the building was tax exempt under section 11.11 of the Tax Code because "the physicians' use of the property was related to the [hospital authority's] use of the property for public purposes." *Id.* at 850. Additionally, the hospital authority contended that the building was exempt, as a matter of law, by operation of former article 4437e, section 16 of the Revised Civil Statutes. *Id.* at 850. This provision stated that "[r]ecognizing the fact that the property owned by [a Municipal Hospital] Authority will be held for public purposes only and will be devoted exclusively to the use and benefit of the public, it shall be exempt from taxation of every character." *See id.* The substance of section 16 is now codified at section 262.004 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 262.004 historical note (Vernon 2001) [Act of May 17, 1957, 55th Leg., R.S., ch. 472, § 16, 1957 Tex. Gen. Laws 1379, 1382]. The court disagreed with the hospital authority's contentions, holding that article 4437e, section 16 was repealed by the enactment of the Tax Code. *Id.* at 851. More importantly, the court stated that the test in these cases "is whether the property in question is held only for public purposes and is devoted exclusively to the use and benefit of the public[,]" citing *Satterlee*, notwithstanding that the Texas Supreme Court in *Satterlee* enunciated this standard under article XI, section 9. *Id.*; *see also Satterlee*, 576 S.W.2d at 779. The court concluded that the medical office building at issue "was not used exclusively for the use and benefit of the public since private doctors were leasing part of the property for their own commercial enterprises." *Dallas County Appraisal Dist.*, 730 S.W.2d at 851. Significantly, the court did not address the hospital authority's contention that the physicians' use of the property might serve the hospital authority's public purpose, suggesting that the court found that possibility irrelevant to its analysis. *See id.*

In an earlier 1986 decision, the Fort Worth Court of Appeals reached a similar conclusion utilizing the exclusive public use standard. *See Tarrant Appraisal Dist.*, 707 S.W.2d at 284. The hospital authority in that case asserted that a medical office building that it leased to private doctors was tax exempt as a matter of law under former article 4437e, section 16 of the Revised Civil Statutes. *Id.* at 282. The court noted that article 4437e, section 16's "public purpose requirement is also contained in the Texas Constitution and in the Texas Tax Code as a prerequisite to tax-exempt status." *Id.* at 284. The court, applying the *Satterlee* exclusive public use test, held that the building was taxable because the building "was not used exclusively for the use and benefit of the public since private doctors were leasing part of the property for their own commercial enterprise." *Id.* at 284 (citing Tex. Att'y Gen. Op. No. MW-430 (1982)).

**C. Attorney General Opinion MW-430**

In Attorney General Opinion MW-430, this office concluded that an office building and parking lot to be constructed by a hospital authority and leased to doctors would not be tax exempt even though the lease revenues generated would be placed in the hospital authority's general funds or be used for the office building. *See* Tex. Att'y Gen. Op. No. MW-430 (1982). The opinion considered whether the building was tax exempt under article VIII, section 2 and article XI, section 9. *See id.* at 2. But, relying on the test enunciated by the Texas Supreme Court in *Satterlee* – that property must be devoted exclusively to the use and benefit of the public to be tax exempt under article XI, section 9 – this office concluded that "by the [lease] arrangement here contemplated, the property would lose its tax exempt status because it is not used exclusively for the benefit of the public." *Id.* at 5. Thus, Attorney General Opinion MW-430 suggested that property must be used exclusively for the benefit of the public to be tax exempt under either article VIII, section 2 or article XI, section 9. *See also* Tex. Att'y Gen. Op. No. JM-1049 (1989) at 3 n.2 ("The Texas Supreme Court has construed the relevant language of article VIII, section 2 . . . to require *exclusive* use by the political subdivision in order that it receive exempt status.").

## II. FACTUAL BACKGROUND AND AUTHORITY'S QUESTIONS

**A. Tomball Hospital Authority**

With this legal background, we turn back to the Authority and its questions. The Authority is "a body politic and corporate" created by the City of Tomball under the Hospital Authority Act, TEX. HEALTH & SAFETY CODE ANN. §§ 262.001-.050 (Vernon 2001 & Supp. 2002). It is authorized under section 262.022 of the Health and Safety Code to construct and operate one or more hospitals, *see id.* § 262.022(a)-(b) (Vernon 2001), "without the intervention of private profit for the use and benefit of the public unless the authority leases the hospital," *id.* § 262.022(b). It may "lease a hospital, or part of a hospital, owned by the authority for operation by the lessee as a hospital under terms that are satisfactory to the board and the lessee." *Id.* § 262.022(c).

**B. Factual Background**

We are informed that the Authority, which operates its hospital as a "licensed general hospital,"[3] is constructing a new ten-floor, patient tower adjacent to its existing hospital building. *See* Request Letter, *supra* note 1, at 1. The Authority wishes to make "readily available for the convenience of its patients" long-term hospital care, but wants to avoid the appearance of "pay source conflict of interest." *Id.* at 2. We are advised that a long-term hospital cannot be operated as a general hospital; it must be operated as a "specialty" hospital. *Id.* Moreover, we are advised that, while it might be possible for the Authority to construct and obtain a separate license for the operation of a long-term care hospital, the Authority's dual ownership of a general hospital and a specialty hospital would pose an additional problem: "In the past, ownership of both facilities by

---

[3]*See* TEX. HEALTH & SAFETY CODE ANN. § 241.003(5) (defining "general hospital"), (15) (defining "special hospital") (Vernon 2001).

a single entity has resulted in allegations by the Department of Justice that the owner was attempting to maximize its Medicare reimbursement." *Id.* The basis for such allegations, we are told, is that:

> The medical care provided to most insured patients in general hospitals, including Medicare patients, is reimbursed based on each patient's diagnosis, known in the health care industry as a Diagnosis Related Group ("DRG"). Reimbursement for Medicare patients admitted to long-term care hospitals is based upon a different payment methodology. According to the Department of Justice, a joint-owner of both a general hospital and a specialty care hospital may be motivated to shorten the patient's length of stay in the general hospital after receiving the DRG-based reimbursement by admitting the patient to the long-term care hospital. By leasing space in its [new building] to an unrelated long-term care provider, the Authority seeks to avoid the appearance of impropriety related to patient care decisions or the movement of patients between the general and specialty care hospitals.

*Id.* The long-term care provider would operate the long-term care hospital as a "hospital-within-a-hospital" on two floors of the new building. *Id.* Finally, we are informed that the "current tax-exempt status of the Authority's property is not in dispute." *Id.*

**C. Questions**

The Authority specifically asks: (1) whether the Authority is subject to the exclusive public use requirement of article XI, section 9 of the Texas Constitution, given that it is not a county, city, or town; (2) if the Authority is subject to that requirement, whether the requirement is "deemed satisfied" by operation of the automatic tax-exemption provision of the Hospital Authority Act or based on the use of the leased property for the public purpose of providing long-term health care; and, (3) if the exclusive public use requirement is not satisfied, whether the Authority retains any tax liability or risks losing its tax-exempt status when it leases space to a third-party, for-profit business enterprise. *See id.* at 1, 4.

## III. DISCUSSION

**A. Whether Exclusive Public Use Requirement Applies to Authority's Property**

The Authority does not explicitly indicate under which state constitutional provision the Authority's property is exempt. The Authority asks whether it is subject to the exclusive public use requirement of article XI, section 9 of the Texas Constitution *given that it is not a county, city, or town. See id.* The question suggests that article XI, section 9 of the Texas Constitution does not apply to the Authority because it is not a county, city, or town; and that, therefore, the exclusive public use requirement does not apply to the Authority's property. If article XI, section 9 does not apply to the Authority, then we must presume that the Authority claims its property is tax exempt

under article VIII, section 2 of the Texas Constitution and section 11.11(a) of the Tax Code. Thus, we understand the Authority to ask whether the Authority's property must satisfy the exclusive public use requirement, derived from the language of article XI, section 9, to qualify for tax exemption under article VIII, section 2 and section 11.11(a) of the Tax Code. We conclude in the affirmative.

**1. Whether article XI, section 9 applies to Authority**

First, we consider the Authority's implicit contention that article XI, section 9 does not apply to its property. This constitutional provision by its terms does not exempt the property of governmental entities other than "counties, cities, and towns." However, the Texas Supreme Court has not overruled its 1945 holding in *Lower Colorado River Authority v. Chemical Bank & Trust Co.*, 190 S.W.2d 48 (Tex. 1945), that article XI, section 9 extends to the property of any governmental agency. *See Satterlee*, 576 S.W.2d at 779; *Leander Indep. Sch. Dist.*, 479 S.W.2d at 913; *see also Hays County Appraisal Dist.*, 973 S.W.2d at 422 (stating that "[t]he Texas Supreme Court has held that this provision extends to property held by government agencies") (citing *Satterlee* and *Leander Indep. Sch. Dist.*); Tex. Att'y Gen. LO-98-028, at 3 n.5 (stating that *Lower Colorado River Authority* "holding has been questioned, but it remains the law"). Indeed, in 1972, the Texas Supreme Court specifically declined to overrule its holding in *Lower Colorado River Authority* because it is now "firmly embedded in our jurisprudence." *See Leander Indep. Sch. Dist.*, 479 S.W.2d at 911. And, in 1978, the Texas Supreme Court again did not reconsider its holding in *Lower Colorado River Authority*. *See Satterlee*, 576 S.W.2d at 778-79.

Thus, the *Lower Colorado River Authority* holding that article XI, section 9 extends to the property of any governmental agency still stands. We disagree with Attorney General Opinion DM-188's statement to the contrary that "more recent decisions have clarified that [article XI, § 9] applies solely to the enumerated governmental entities." Tex. Att'y Gen. Op. No. DM-188 (1992) at 2 (citing *State v. Houston Lighting & Power Co.*, 609 S.W.2d 263, 266 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e.), and *Satterlee*, 576 S.W.2d at 778-79); *see also Houston Lighting & Power Co.*, 609 S.W.2d at 266 (stating in dicta that framers of constitution contemplated that article XI, § 9 applies only to property owned by counties, cities, and towns, citing *Leander Indep. Sch. Dist.*, 479 S.W.2d 908).

Turning back to the Authority's concern, the expansive judicial construction of article XI, section 9 permits the Authority to claim property tax exemption under this provision notwithstanding the constitutional language. However, the Authority is not required to proceed under article XI, section 9, if it believes that article VIII, section 2 applies to the Authority's property.

**2. Whether Authority's property must satisfy exclusive public use requirement**

Next, we consider the Authority's principal question: whether the Authority's property must satisfy the exclusive public use requirement, derived from the language of article XI, section 9, to qualify for tax exemption under article VIII, section 2 of the constitution and section 11.11(a) of the Tax Code. Again, we agree that article VIII, section 2 of the constitution and section 11.11(a) of the

Tax Code do not expressly require exclusive public use. *Grand Prairie Hospital Authority v. Dallas County Appraisal District* and *Grand Prairie Hospital Authority v. Tarrant Appraisal District* may not have applied the correct standard to determine whether an entity's property is entitled to a tax exemption under these provisions. *Compare Dallas County Appraisal Dist.*, 730 S.W.2d 849, 851 and *Tarrant Appraisal Dist.*, 707 S.W.2d 281, 284, *with Leander Indep. Sch. Dist.*, 479 S.W.2d at 913 ("In this instance [under article VIII, section 2], the Legislature is authorized to exempt 'public property used for public purposes.' It is essential then that the property be used for public purposes . . . ."). However, these two long-standing authorities have not been overruled or questioned by a court. Accordingly, based on these cases, we conclude that the Authority's property must satisfy the "exclusive public use" requirement to qualify for tax exemption under article VIII, section 2 of the Texas Constitution and section 11.11(a) of the Tax Code.

**B. Whether Exclusive Public Use Requirement is "Deemed" Satisfied Here**

The Authority next asks whether, if it is subject to the exclusive public use requirement, the requirement is "deemed satisfied" by the automatic tax-exemption language of section 262.004 of the Health and Safety Code or based on the use of the leased property for the public purpose of providing long-term health care. Request Letter, *supra* note 1, at 1, 4.

**1. By section 262.004 of the Health and Safety Code**

We conclude, as a matter of law, that the exclusive public use requirement is not satisfied by the statutory tax-exemption language of section 262.004 of the Health and Safety Code. Again, section 262.004 provides that: "The [hospital] authority's property is exempt from taxation because it is held for public purposes only and devoted exclusively to the use and benefit of the public." TEX. HEALTH & SAFETY CODE ANN. § 262.004 (Vernon 2001). It is unclear to us what purpose this provision serves. We note that section 262.004 is a nonsubstantive codification of former article 4437e of the Revised Civil Statutes, which *Dallas County Appraisal District* determined was repealed by the enactment of section 11.11(a) of the Tax Code. *See Dallas County Appraisal Dist.*, 730 S.W.2d at 851; *see also supra* at p. 3. Thus, the validity of section 262.004 is questionable. But, more importantly, publicly owned property is not, as a matter of law, used for public purposes merely because a statute so provides: whether a particular property is used for public purposes is a question of fact to be determined on a case-by-case basis. *See Dallas County v. Tex. Turnpike Co.*, 268 S.W.2d 767 (Tex. Civ. App.–Dallas 1954), *aff'd*, 271 S.W.2d 400, 402 (Tex. 1954); *see also N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) ("The assertion that statutory provisions can replace constitutional requirements is erroneous."); *Tex. Turnpike Co. v. Dallas County*, 271 S.W.2d at 402 ("Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on the facts, that may not be created or conferred by mere legislative, or even contractual declaration.").

**2. By proposed use**

To satisfy the exclusive public use requirement, the leased premises must be used exclusively "for the health, comfort, and welfare of the public" served by the Authority's hospital. For tax-exemption purposes, the Texas Supreme Court has said that public property is used for public purposes if it is used primarily "for the health, comfort, and welfare of the public." *A. & M. Consol. Indep. Sch. Dist.*, 184 S.W.2d at 916. "It is not essential that it be used for governmental purposes . . . . It is sufficient if it be property which all of the public has a right to use under proper regulations . . . ." *Id.* Furthermore, "[t]he fact that charges are made or compensation is received for its use does not withdraw it from its public character, provided such charges are an incident to its use by the public and the proceeds received for its use inure to the benefit of the political subdivision." *Id.* If the Authority's leased premises will be used primarily "for the health, comfort, and welfare of the public" served by the Authority's hospital, they will be used for public purposes. It follows that, to satisfy the *exclusive* public use requirement, the leased premises must be used exclusively "for the health, comfort, and welfare" of that population.

The Authority is not foreclosed from showing that the two floors leased to the private hospital will be used exclusively for the hospital's public purposes. *Grand Prairie Hospital Authority v. Dallas County Appraisal District, Grand Prairie Hospital Authority v. Tarrant Appraisal District*, and Attorney General Opinion JC-0311, which relied on those cases, dealt with the lease of hospital authority-owned building, or part of a building, to physicians for their private practices, *i.e.*, for private commercial use. *See Dallas County Appraisal Dist.*, 730 S.W.2d at 851; *Tarrant Appraisal Dist.*,707 S.W.2d at 284; Tex. Att'y Gen. Op. No. JC-0311 (2000) (concluding that building owned by hospital district but leased to physicians for their private medical practice was not tax exempt). In those cases, the argument that the physicians' use of the leased premises supported the hospital authority's public purposes did not prevail. But, based on the information provided to us, we understand the circumstances to be different here and presume that to be the Authority's implicit legal argument: that the leased premises will be used wholly for the hospital's public purposes, notwithstanding that the lessee's use of the premises is for the lessees' private commercial benefit – given that the lessee is a for-profit company.

Prior opinions of this office indicate that use of public property which produces income or profit for a private entity is not necessarily fatal to a claim for exemption. *See* Tex. Att'y Gen. Op. Nos. DM- 436 (1997), DM-188 (1992), JM-464 (1986), JM-405 (1985). Attorney General Opinion DM-188 explains that "leasing of public property purely for private commercial uses removes the tax exemption for the property under both constitutional and statutory standards." Tex. Att'y Gen. Op. No. DM-188 (1992) at 8 (citing *Dallas County Appraisal Dist.*, 730 S.W.2d 849, *Tarrant Appraisal Dist.*, 707 S.W.2d 281). However, Attorney General Opinion DM-188 advises, "public property put to a private use will remain tax exempt where the private use can either be characterized as a public purpose or is in direct support of a public purpose of the political subdivision." *Id.* at 8 (citing to Tex. Att'y Gen. Op. Nos. JM-1049 (1989), JM-464 (1986)). *See also* Tex. Att'y Gen. Op. Nos. JM-1049 (1989) (concluding that under article VIII, section 2 of the Texas Constitution and section 11.11 of the Tax Code, the state's interest in real property comprising the permanent school fund is exempt from ad valorem taxes even when the property is leased to a private business

enterprise for commercial use); JM-464 (1986) (concluding that under article XI, section 9, article VIII, section 2 of the constitution, and section 11.11 of Tax Code, "city's airport and airport facilities, including those leased to a private individual, are impressed with a public purpose sufficient to meet" the constitutional and statutory tests for tax exemption).

Nonetheless, we ultimately cannot decide, as the Authority asks us to do, whether the specific proposed use of the leased premises satisfies the exclusive public use requirement. The Authority's question assumes that such a determination can be made as a matter of law. But, as this office has indicated in earlier opinions, such a determination can only be made based on a consideration of the particular facts. *See* Tex. Att'y Gen. Op. No. DM-188 (1992) at 8 (whether private use constitutes or supports city's public purpose must be determined on basis of facts and constitutional and statutory terms authorizing city's acquisition and use of building).[4] We do not have all the information that a court or a trier of facts would need to make such a determination. We know, based solely on the information provided to us, that the proposed lease to the private company is to provide long-term health care to patients served by the Authority's hospital and that could be provided by the Authority's hospital. However, we do not know, for instance, precisely what this long-term health care comprises and whether such care may be provided by or is commonly provided by municipal authority hospitals. *See id.* Nor do we have any information about the lease arrangement and the commercial advantage inuring to the lessee. *Cf. City of Austin v. Univ. Christian Church*, 768 S.W.2d 718, 719 (Tex. 1988) (church's lease arrangement with private parking company and company's profit from church property or commercial advantage gained thereby are relevant to determination of whether property is used primarily for religious worship under section 11.20 of the Tax Code).

In sum, we cannot "deem" the exclusive public use requirement with respect to the Authority's new building "satisfied," as the Authority asks us to do, because we cannot determine whether the leased premises will be used exclusively "for the health, comfort, and welfare of the public" served by Authority's hospital.[5]

## C. Authority's Liability for Taxes if Exclusive Public Use Requirement is Not Met

Finally, the Authority asks whether it retains any tax liability or risks losing the tax-exempt status of its new building or any other property when it leases space to a third-party, for-profit business enterprise and the use of the leased premises does not satisfy the exclusive public purpose requirement. *See* Request Letter, *supra* note 1, at 1, 4. Given the generality of the question, we address only the application of section 25.07 of the Tax Code specifically raised and discussed in

---

[4]*See also infra* note 5.

[5]*See* Tex. Att'y Gen. Op. Nos. DM-188 (1992); DM-436 (1997) at 8 (concluding that attorney general opinion cannot determine whether particular airport facilities operated under lease by private entity are used in direct support of operation of airport and are therefore tax exempt because answers require resolution of fact questions.); JM-405 (1985) at 3-4 (concluding that determination that hospital district property leased to Texas Department of Health, Panhandle Community Action, and Panhandle Planned Parenthood for providing health care and community services to area residents is used for public purposes is a factual matter on which this office cannot rule).

the Request Letter. As we understand it, the Authority suggests that if the use of the leased premises does not satisfy the exclusive public purpose requirement, the leasehold interest would be listed in the lessee's name pursuant to section 25.07 of the Tax Code and the lessee would be legally responsible for taxes imposed on the leased property, but otherwise the lease would not affect the tax-exempt status of the Authority's property. *See id.* at 3. We disagree. We conclude that if the leased space is not used exclusively for public purposes, the Authority, as the owner of the property, would then be liable under the law for taxes assessed against the building.

Taxes are generally assessed against the owner of property encumbered by a leasehold or other interest on the value of the fee estate, which includes the leasehold interest. *See* TEX. TAX CODE ANN. § 25.06 (Vernon 2001); *County of Dallas Tax Collector v. Roman Catholic Diocese*, 41 S.W.3d 739, 743 (Tex. App.–Dallas 2001, no pet.); *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 874-75 (Tex. App.–Austin 2002, pet. denied). Thus, when property is leased, the lessor, rather than the lessee, is responsible for the taxes on the full value of the property. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 875 (Tex. 1990).

When tax-exempt property is leased, however, the lessee is subject to taxation. *See* TEX. TAX CODE ANN. §§ 23.13, 25.07 (Vernon 2001). Section 23.13 of the Tax Code requires appraisal at market value of "[a] taxable leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered." *Id.* § 23.13. If the leasehold or possessory interest in exempt property is for at least one year, section 25.07 requires it to be "listed in the name of the owner of the possessory interest." *Id.* § 25.07(a); *see also id.* § 25.07(b) (excepting certain leasehold and possessory interest from its listing requirement). The "'listing' provided for in section 25.07 has the effect, in an appropriate instance, of imposing tax liability." *Roman Catholic Diocese*, 41 S.W.3d at 745 (concluding that mere listing of private lessee's name on tax rolls was insufficient to establish that encumbered estate was tax exempt as matter of law); *see also* Tex. Att'y Gen. Op. No. DM-188 (1992) at 6 (sections 23.13 and 25.07 require taxation of leasehold interests in tax-exempt property, including property owned by political subdivisions) (and cases cited). Thus, "if the encumbered estate is exempt, the leasehold interest is valued and taxed separately from the fee, and the leasehold owner is liable for the property taxes." *Roman Catholic Diocese*, 41 S.W.3d at 744 (citing *Cherokee Water Co.*, 801 S.W.2d at 875). In such an instance, the fee simple owner is not liable in the event that the owner of the leasehold interest fails to pay the taxes imposed. Tex. Att'y Gen. Op. No. JM-1049 (1989) at 11.

Significantly, the section 25.07 exception to the general rule applies only when the leased property is used for the public purposes of its public owner. TEX. TAX CODE ANN. § 25.07 (Vernon 2001). *See Gables Realty Ltd. P'ship*, 81 S.W.3d at 875 (holding that because company uses leased property for private commercial purposes rather than for public purposes, state-owned land is not exempt from taxation, thereby precluding application of section 25.07 of the Tax Code); *see also Daugherty v. Thompson*, 9 S.W. 99, 101 (Tex. 1888) (recognizing that property exempted from taxation to its owner generally remains exempt while used for the purposes on account of which the exemption is given, but becomes subject to taxation if used for a purpose which does not itself give

the exemption). Section 25.07 by its terms applies only when the real property encumbered by the leasehold interest is "exempt from taxation to the owner of the estate." TEX. TAX CODE ANN. § 25.07 (Vernon 2001); *Gables Realty Ltd. P'ship*, 81 S.W.3d at 873; *Roman Catholic Diocese*, 41 S.W.3d at 744; Tex. Att'y Gen. Op. No. JM-59 (1983) at 2. The owner must establish that the property after it is leased is tax exempt. *Roman Catholic Diocese*, 41 S.W.3d at 744. In other words, whether the governmentally-owned property is tax exempt must be determined by taking into account the lessee's use of the property. *Gables Realty Ltd. P'ship*, 81 S.W.3d at 875.

In a recent decision, the Austin Court of Appeals considered whether section 25.07 applies to state-owned land leased to a realty company for its private commercial use. The court held that the land was not tax exempt and section 25.07 of the Tax Code did not apply, explaining that:

> [W]hether state property is exempt in the hands of its owner under section 25.07 must be determined by applying section 11.11 [of the Tax Code], taking full account of the lessee's use of the property. Because Gables Realty uses the leased properties for private commercial use, the State's lands are not exempt from taxation, thereby precluding application of section 25.07.

*Id.* The court rejected the realty company's contention that under section 25.07 the tax-exempt status of the property must be determined before execution of the lease, *i.e.,* without consideration of any lease in place, because otherwise "any private commercial lease would automatically negate the State's tax exempt status and render section 25.07 a nullity for state leases." *Id.* at 873-74. The court noted that the realty company's construction of section 25.07

> would permit property that is leased for a non-public purpose to retain its tax exempt classification, even though the same property would be taxed if used by its owner in an identical manner. Such a result cannot be proper. If we interpret section 25.07 as Gables Realty requests, then we are effectively bestowing upon a private commercial lessee using state land for non-public purposes a more favorable tax status than that available to the state entity from which it leased the property. . . . Rather, the Tax Code ensures that land that is exempt to the State will become taxable at its full fee value to any lessee putting the land to private commercial use.

*Id.* at 874 (footnotes omitted).

In short, if the leased floors in the Authority's building are not used exclusively for public purposes, section 25.07 of the Tax Code does not apply.

## SUMMARY

A building owned and operated by the Tomball Hospital Authority (the "Authority"), but leased in part to a private business for operation as a "long-term care hospital," must satisfy the exclusive public use requirement to qualify for property tax exemption under article VIII, section 2 of the Texas Constitution and section 11.11(a) of the Tax Code. That requirement is not, as a matter of law, satisfied by the statutory tax-exemption language of the Authority's enabling statute, section 262.004 of the Health and Safety Code. To satisfy the exclusive public use requirement, the leased space must be used exclusively "for the health, comfort, and welfare of the public" served by the Authority's hospital. Whether the proposed use of the leased space as a privately operated long-term care hospital satisfies the exclusive public use requirement necessitates investigation and resolution of facts. If the leased space is not used exclusively for public purposes, the Authority would be liable under the law for taxes assessed against the building.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee