ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 29, 2008

The Honorable William J. Stroman, Jr.        Opinion No. GA-0600
Sterling County Attorney
Box 88                                       Re: Whether a county commissioners court is prohibited
Sterling City, Texas 76951                   from executing a tax abatement agreement with a wind
                                             turbine company for its fixtures and improvements to
                                             be located on a commissioner's real property; whether
                                             a commissioner who will receive royalties from a wind
                                             turbine company must abstain from voting on a tax
                                             abatement agreement with the company  (RQ-0612-GA)

Dear Mr. Stroman:

    Section 312.402(a) of the Tax Code authorizes a county to execute tax abatement agreements
with the owners of taxable property located in a reinvestment zone, but subsection (d) expressly
excludes property owned or leased by a member of a commissioners court as subjects of such
agreements. See TEX. TAX CODE ANN. § 312.402(a), (d) (Vernon Supp. 2007). You ask whether
subsection (d)'s exclusion prohibits a county commissioners court from executing a tax abatement
agreement with a wind turbine company for its fixtures and improvements to be located on a
commissioner's real property.[1] You also ask whether the commissioner, who will receive royalties
and other payments from the wind turbine company, must abstain from voting on a tax abatement
agreement with the company. Stroman Brief, *supra* note 1, at 2.

    You explain that Sterling County has created reinvestment zones to grant tax abatements to
wind turbine companies. *Id.* The companies obtain a leasehold from a property owner, construct
wind turbines on the property, and pay the owner a royalty on the electricity generated by the
turbines. *Id.* One such company has petitioned the commissioners court for a tax abatement
agreement for the fixtures and improvements it plans to construct on real property belonging to a
member of the commissioners court. *Id.* You state that the tax abatement agreement would concern
only the fixtures and improvements owned by the wind turbine company but not the underlying real
property owned by the commissioner. *Id.* at 4–5. Because the fixtures and improvements are owned
by the wind turbine company, not by a member of the commissioners court, you reason that the
fixtures and improvements qualify for tax abatement under section 312.402. *See id.* at 5–6.

---

[1]*See* Letter and Brief from Honorable William J. Stroman, Jr., Sterling County Attorney, to Honorable Greg
Abbott, Attorney General of Texas, at 2 (July 31, 2007) (on file with the Opinion Committee, *also available at* http://
www.oag.state.tx.us) [hereinafter Stroman Brief].

## I.    Background

As your question suggests, Texas law generally recognizes separate ownership of improvements located on leased land. *See Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 837 (Tex. App.—Austin 2004, no pet.) (citing *Wright v. Macdonell*, 30 S.W. 907, 909 (Tex. 1895)).[2] The tax treatment of real property, a leasehold interest in the real property, and improvements on the property depends on specific circumstances, including the taxable status of the various interests. Ordinarily, "the lessor rather than the lessee is responsible for taxes on the full value of the property." *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 875 (Tex. 1990); *see also* TEX. TAX CODE ANN. § 25.06(a) (Vernon Supp. 2007). Lessors and lessees commonly reallocate the tax burden, but that is a contractual matter between themselves. *A. J. Robbins & Co. v. Roberts*, 610 S.W.2d 854, 856 (Tex. Civ. App.—Amarillo 1980, writ ref'd n.r.e.). If, however, tax-exempt real property is encumbered with a nonexempt leasehold or other possessory interest, the leasehold or possessory interest is generally subject to ad valorem taxation. *See* TEX. TAX CODE ANN. § 25.07(a) (Vernon Supp. 2007).

Similarly, improvements may be listed on the tax rolls in the name of the owner of real property without regard to actual ownership of the improvements. *Id.* § 25.08(a).[3] But if the real property is tax exempt, generally the improvements must be listed in the name of the owner of the improvements. *Id.* § 25.08(b). And either the owner of the land or the owner of the improvement may request that the land and the improvement receive separate tax treatment. *Id.* § 25.08(c).[4]

The tax abatement statute that you reference, section 312.402, is located in subchapter C of the Property Redevelopment and Tax Abatement Act. *Id.* § 312.402; *see also* § 312.001 (Vernon

---

[2]While you ask about "fixtures and improvements," the Tax Code's definition of an "improvement" includes a "fixture." TEX. TAX CODE ANN. § 1.04(3)(A) (Vernon Supp. 2007).

[3]Section 25.08 provides in part:

> (a) Except as provided by Subsections (b) through (f), an improvement may be listed in the name of the owner of the land on which the improvement is located.
>
> (b) If a person who is not entitled to exemption owns an improvement on exempt land, the improvement shall be listed in the name of the owner of the improvement.
>
> (c) When a person other than the owner of an improvement owns the land on which the improvement is located, the land and the improvement shall be listed separately in the name of the owner of each if either owner files with the chief appraiser before May 1 a written request for separate taxation on a form furnished for that purpose together with proof of separate ownership. . . .

TEX. TAX CODE ANN. § 25.08(a)–(c) (Vernon Supp. 2007).

[4]*See also id.* § 25.04 (Vernon 2001) (stating the general rule that "when different persons own land and improvements in separate estates or interests, each separately owned estate or interest shall be listed separately in the name of the owner of each if the estate or interest is described in a duly executed and recorded instrument of title").

2002) (short title of the act). Under section 312.401 of the subchapter, a county commissioners court may "designate as a reinvestment zone an area of the county that does not include area in the taxing jurisdiction of a municipality." *Id.* § 312.401(a). Section 312.402 authorizes a commissioners court to execute tax abatement agreements with owners of taxable real property and with owners of leasehold interests in or improvements on tax-exempt real property in the designated zone:

> (a) The commissioners court may execute a tax abatement agreement with the owner of taxable real property located in a reinvestment zone designated under this subchapter [i.e., subchapter C]. The court may execute a tax abatement agreement with the owner of a leasehold interest in tax-exempt real property or leasehold interests or improvements on *tax-exempt* real property that is located in a reinvestment zone designated under this subchapter to exempt a portion of the value of tangible personal property or leasehold interests or improvements on *tax-exempt* real property located on the real property. . . .

*Id.* § 312.402(a) (Vernon Supp. 2007) (emphasis added).

Generally, a commissioners court may not enter into a tax abatement agreement with one of its members:

> Except as otherwise provided by this subsection, property that is located in a reinvestment zone designated by a county under this subchapter and that is owned or leased by a person who is a member of the commissioners court may not be subject to a tax abatement agreement made under this section.

*Id.* § 312.402(d). Thus, a member of a commissioners court is generally disqualified from the tax abatement agreements that owners of taxable real property and owners of leaseholds may otherwise receive under subsection (a). *See id.* The exception is for property subject to a tax abatement agreement in effect when the property owner becomes a member of the commissioners court—membership on the court does not cause such property to lose its eligibility. *Id.*

## II.    Analysis

You ask specifically whether section 312.402(d) prohibits a county from executing a tax abatement agreement with a wind turbine company for its fixtures and improvements located on a commissioner's real property. Stroman Brief, *supra* note 1, at 2; *see also* TEX. TAX CODE ANN. § 312.402(d) (Vernon Supp. 2007). Before we may address the applicability of subsection (d), however, we must consider your assumption that "[w]ithin the reinvestment zone the commissioners court may enter into a tax abatement agreement with *any* landowner or leaseholder." Stroman Brief, *supra* note 1, at 4 (emphasis added). Determining whether property of a particular landowner or

leaseholder may be the subject of a tax abatement agreement requires a construction of the commissioners court's statutory authority to execute such an agreement.

The primary objective of statutory construction is to effectuate the Legislature's intent, to be discerned, if possible, from the language chosen. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We must presume that every word of a statute was used for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Likewise, we must presume that words excluded from a statute were excluded for a purpose. *Id.* Here, we are construing the commissioners court's authority to exempt a portion of the value of a leaseholder's property or interests by tax abatement agreement. *See* TEX. TAX CODE ANN. § 312.402(a) (Vernon Supp. 2007). Statutory tax exemptions must be strictly construed "because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991).

With these rules of construction in mind, we turn to the authority granted in section 312.402(a). The first sentence of section 312.402(a) authorizes a county to "execute a tax abatement agreement with the owner of taxable real property." TEX. TAX CODE ANN. § 312.402(a) (Vernon Supp. 2007). The Tax Code's definition of taxable "real property" includes fixtures and improvements. *See id.* § 1.04 (2)(B) (defining "real property" to include "an improvement"), (3)(A) (defining "improvement" as including "a building, structure, fixture, or fence erected on or affixed to land"). Fixtures and improvements owned by the owner of real property are also real property, but ordinarily improvements owned by the lessee are personalty. *See Travis Cent. Appraisal Dist*, 140 S.W.3d at 838 (observing that parties may agree that improvements are to remain the personal property of lessee); Tex. Att'y Gen. Op. No. JC-0150 (1999) at 3–4 (opining that improvement that remains the property of a lessee is taxable as personalty).[5] Thus, fixtures and improvements owned by the wind turbine company as personal property would not be "real property" that may be the subject of a tax abatement agreement under the first sentence of section 312.402(a). *See* TEX. TAX CODE ANN. § 312.402(a) (Vernon Supp. 2007).

The second sentence of section 312.402(a) authorizes a tax abatement agreement for leasehold interests in or improvements on real property that is tax exempt. *See id.* By expressly authorizing a tax abatement agreement for property located on tax-exempt real property, we must assume the Legislature did not intend to authorize such an agreement for property located on taxable real property. *See State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 241 (Tex. 1943) (holding that "the express mention or enumeration of one person, thing, consequence, or class is equivalent to an

---

[5]*Also cf. Norris v. Thomas*, 215 S.W.3d 851, 855 (Tex. 2007) (holding that an object cannot be an improvement to real property entitled to homestead protection unless it is annexed to the real property with the intent that it be a permanent addition to the realty); *Sharkey v. Hollums*, 400 S.W.2d 353, 355 (Tex. Civ. App.—Amarillo 1966, writ ref'd n. r. e.) (holding in landlord–tenant dispute that improvements remained property of tenant pursuant to agreement). *But cf.* Tex. Att'y Gen. Op. No. JC-0282 (2000) at 5 (concluding that "[s]ection 1.04(3)(B) of the Tax Code does not foreclose as a matter of law the possibility that a travel trailer attached to someone else's property is an improvement within the meaning of section 1.04(3)(A)").

express exclusion of all others.").[6] Neither section 312.402(a), nor any other statute of which we are aware, authorizes a commissioners court to execute a tax abatement agreement for leasehold interests in or improvements on taxable real property.

You do not intimate that the commissioner's property is tax exempt for any reason. Stroman Brief, *supra* note 1, at 2, 4–5. If the commissioner's property is not tax exempt, the second sentence of section 312.402(a) would not authorize a tax abatement agreement for the wind turbine company's fixtures or improvements to be located on the commissioner's property. Thus, it seems unlikely that the fixtures or improvements you describe would qualify for a tax abatement agreement under either sentence of section 312.402(a). But because we cannot conclude as a matter of law that the property would not qualify under any possible facts and circumstances, we will address your question concerning the disqualification in section 312.402(d).

If the wind turbine company's "fixtures and improvements" constitute "improvements on tax-exempt real property that is located in a reinvestment zone" under section 312.402(a), then subsection (d) would not prohibit a tax abatement agreement for such property merely because the commissioner owns the underlying real property. The disqualification of subsection (d) expressly applies to "property . . . owned or leased by a person who is a member of the commissioners court." *See* TEX. TAX CODE ANN. § 312.402(d) (Vernon Supp. 2007). As you describe the facts, the fixtures and improvements owned by the wind turbine company are not "property . . . owned or leased by a person who is a member of the commissioners court," and thus the plain terms of the disqualification in subsection (d) would not apply. *See id.*; *see also* Stroman Brief, *supra* note 1, at 5–6.

You also ask if the commissioner must abstain from voting on the proposition to execute a tax abatement agreement with the wind turbine company for its fixtures and improvements located

---

[6]Our understanding that section 312.402 of the Tax Code authorizes a tax abatement agreement with a leaseholder for improvements located on tax-exempt property but not on taxable real property is further supported by legislative history of the statute. The second sentence of subsection (a) of the statute was added by the Seventy-seventh Legislature. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 640, § 3, 2001 Tex. Gen. Laws 1205, 1206. The analysis of the bill as enrolled explained that the purpose was to allow tax abatement agreements with the lessee of city or county owned land and buildings:

> For some time now, it has been the practice for cities and counties throughout the state of Texas to allow companies to lease city-owned or county-owned land and buildings, and provide these companies with tax abatements for equipment and other tangible personal property located on the property. However, a recent attorney general opinion determined that cities and counties did not have the authority to abate taxes for companies holding leasehold interests, which may compromise city and county tax abatement agreements. House Bill 1448 clarifies state law by authorizing the governing body of a municipality to provide a tax abatement agreement, for a period not to exceed 10 years, to an owner of a leasehold interest in specified tax-exempt real property that is located in a reinvestment zone.

HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, TEX. H.B. 1448, 77th Leg., R.S. (2001).

on the commissioner's real property. Stroman Brief, *supra* note 1, at 2. Under section 171.004 of the Local Government Code, a member of a commissioners court generally may not participate in a vote on a matter involving the commissioner's real property "if it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property, distinguishable from its effect on the public." TEX. LOC. GOV'T CODE ANN. § 171.004(a)(2), (c) (Vernon 1999); *see also id.* § 171.001(1) (defining "local public official" to include a member of a county commissioners court). You state that the commissioner is to receive royalties on electricity generated by the turbines on his property and will receive payment for damages to his surface estate from the wind turbine company. Stroman Brief, *supra* note 1, at 5. While it seems likely that the tax abatement agreement will have a "special economic effect" on the value of the commissioner's real property, that is a fact issue that an attorney general opinion cannot resolve. *See* Tex. Att'y Gen. Op. No. GA-0337 (2005) at 5 (stating that "[o]rdinarily, the attorney general cannot decide in the opinion process whether a governmental entity's action will have a special economic effect on a business entity or the value of real property distinguishable from its effect on the public, because this decision requires the investigation and resolution of fact questions."); *see id.* at 6 (noting that local official must determine, in the first instance, whether the official is required to file an affidavit of interest and abstain from voting on particular matter).

## S U M M A R Y

A county may enter into a tax abatement agreement with the owner of taxable real property located in a reinvestment zone, and with the owner of a leasehold interest in or improvements on tax-exempt property located in a reinvestment zone. Assuming that the "fixtures and improvements" owned by a wind turbine company constitute "improvements on tax-exempt real property that is located in a reinvestment zone" under section 312.402 of the Tax Code, the mere fact that a member of a commissioners court owns the real property on which the fixtures and improvements will be located does not prohibit fixtures and improvements from being the subject of a tax abatement agreement.

A member of a commissioners court generally must abstain from a vote on a matter if it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property distinguishable from its effect on the public. Whether a vote on a particular tax abatement agreement will have such a special economic effect is generally a question of fact that cannot be resolved in an attorney general opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee